**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| BLACK & VEATCH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-2350-SAC |
| | ) | |
| ASPEN INSURANCE (UK) LTD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court upon Defendants Aspen Insurance (UK) Ltd., Catlin Lloyd's Syndicate 2003, Liberty Mutual Insurance Europe (UK) Ltd.'s (collectively, the "Liability Insurers") Motion for Discovery Order (ECF No. 118). The Liability Insurers' motion seeks to: (1) preclude Plaintiff Black & Veatch Corporation ("B&V") from using documents not disclosed as required by the Scheduling Order; (2) compel B&V to amend its answers to certain requests to admit or, in the alternative, deem those requests admitted; (3) require B&V to amend its answers to certain interrogatories; and/or (4) amend the Scheduling Order. For the following reasons, the Court hereby grants in part and denies in part the Liability Insurers' motion.

### I.    Background

As set forth in B&V's amended complaint, this lawsuit stems from a series of agreements between B&V and American Electric Power Service Corporation ("AEP") in its own capacity and/or as an agent for other power companies (collectively, the "Owners"), to engineer, procure material and equipment for, and construct several wet flue gas desulfurization systems for various power plants. These wet flue gas desulfurization systems are also known as jet bubble reactors ("JBRs"). Although the design and construction of each JBR varies, they share common characteristics. Generally, a JBR is a large steel tank structure (approximately ten stories tall)

that removes sulfur dioxide and other contaminants from exhaust gases of coal-fired power plants.

After the construction of the JBRs were completed, the Owners alleged significant defects in at least seven of the JBRs located at the following four power plants: (1) Cardinal power plant, located in Brilliant, Ohio; (2) Conesville power plant, located in Conesville, Ohio; (3) Kyger Creek power plant, located in Cheshire, Ohio; and (4) Clifty Creek power plant, located in Madison, Indiana. These major deficiencies include latent defects in the JBRs' internal components and gas risers, which are a critical component for the JBRs and their structural integrity. B&V alleges that these serious problems were the result of deficient installation work and procurement of components by subcontractors, principally Midwest Towers, Incorporated ("MTI").

Because of these serious deficiencies and resulting damages, the Owners demanded the complete replacement of both the internal components and the installed gas risers. After B&V notified insurers of the Owners' claims, it entered into a settlement agreement with the Owners. As a part of the agreement, B&V agreed to pay a lump-sum to the Owners for repair costs and also to replace defective components. Replacement of the internal components also required the removal of and physical damage to non-defective components. The amounts paid to reimburse the Owners and to repair and replace the various defective components cost B&V several millions of dollars.

B&V submitted a claim to its professional liability carriers for the incidences arising from the JBR projects. B&V also subsequently sued MTI to recover some of the incurred costs. Moreover, B&V brought this breach of contract and declaratory judgment action against various

insurance providers, seeking damages and an adjudication of rights, duties, and obligations under certain insurance policies.

Prior to the construction of the JBRs, B&V procured commercial general liability coverage from several insurers. Zurich Insurance Company ("Zurich") provided the primary layer of general liability coverage. The coverage issued by the Liability Insurers is in excess to the general liability coverage provided by Zurich. Defendants Aspen Insurance (UK) Ltd. and Catlin Lloyd's Syndicate 2003 provided the first layer of excess liability coverage. Defendant Liberty Mutual Insurance Europe (UK) Ltd. provided a second layer of excess liability coverage. In addition to B&V's liability coverage, AEP and the various Owners of the power plants procured property insurance from Defendants Factory Mutual Insurance Company and Associated Electric & Gas Insurance Services, Ltd. (collectively, the "Property Insurers") and Energy Insurance Services, Inc., which has been dismissed from this matter.

After this litigation was initiated, the Court issued a Scheduling Order that required various documents described in the respective parties' Rule 26(a)(1) initial disclosures to be produced at the time the parties exchanged initial disclosures. The Liability Insurers argue that, despite their own compliance, B&V has not produced the documents identified in their initial disclosures or any evidence supporting its claims. In addition to B&V's purported failure to produce documents, the Liability Insurers assert that B&V has inadequately responded to the Liability Insurers' requests for admissions, first set of interrogatories, and second set of interrogatories. The Liability Insurers argue that these deficiencies still exist despite repeated discussions between the parties and extensions of time granted by the Court.

## II.    Procedural Conference Requirement

Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2 require a moving party, in good faith, to confer with opposing counsel before filing a motion to resolve any discovery disputes. When a motion is filed, it "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[1] The duty to confer generally requires counsel to "converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."[2] In this case, the Liability Insurers have sent letters, e-mails, and conducted telephonic conference calls with B&V to try and resolve these discovery disputes.[3] These discussions appear to address and compare the parties' respective views on the current disputes. Based upon these meaningful discussions, the Court finds that the Liability Insurers have satisfied their meet-and-confer obligation.

## III.    Discussion

As previously stated, the Liability Insurers' motion seeks to preclude B&V from using allegedly undisclosed documents, compel B&V to amend its answers to certain requests to admit or deem them admitted, require B&V to amend its answers to certain interrogatories, and amend the current Scheduling Order. The Court addresses each in turn.

---

[1] Fed. R. Civ. P. 37(a)(1).

[2] D. Kan. Rule 37.2.

[3] *See* Ex. D, ECF No. 119-4; Ex. E, ECF No. 119-5; Ex. F, ECF No. 119-6; Ex. G, ECF No. 119-7; Ex. H, ECF No. 119-8.

## A. Allegedly Undisclosed Documents

The Liability Insurers assert that B&V has not produced documents along with its initial disclosures as required by the Scheduling Order. As such, the Liability Insurers seek to preclude B&V from using these documents in this litigation.

The Scheduling Order states:

> The parties shall exchange by **March 29, 2013,** the information required by Fed. R. Civ. P. 26(a)(1). In order to facilitate settlement negotiations and to avoid unnecessary expense, the parties have agreed that, without any need for formal requests for production, copies of the various documents described in the parties' respective Rule 26(a)(1) disclosures shall be exchanged by **March 29, 2013**.[4]

Rule 26(a)(1)(A)(ii) requires disclosure of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control which may be used to support its claim or defenses, unless the use would be solely for impeachment. Rule 26(a)(1)(A)(iii) also requires the parties to provide:

> a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]

The main purpose of Rule 26(a)(1) disclosures "is to accelerate the exchange of basic information about the case and to eliminate the paper work involved in requesting such information."[5] Initial disclosures should provide the parties with information essential to the proper litigation of all relevant facts and to eliminate surprise and promote settlement.[6] In short,

---

[4] Scheduling Order at 3-4, ECF No. 57 (emphasis in original).

[5] Fed. R. Civ. P. 26(a), advisory committee's note (1993).

[6] *Hertz v. Luzenac Am., Inc.*, No. CIVA04CV1961LTBCBS, 2006 WL 994431, at *5 (D. Colo. Apr. 13, 2006).

the Rule 26(a)(1) disclosure requirements should "be applied with common sense in light of the principles of Rule 1, keeping in mind the salutary purposes that the rule is intended to accomplish. The litigants should not indulge in gamesmanship with respect to the disclosure obligations."[7] A party's obligation to make available the supporting documents pertaining to the calculation of damages "applies only with respect to documents then reasonably available to it and not privileged or protected as work product."[8] In addition to providing initial disclosures, Rule 26(e) states:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:
>
> (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
>
> (B) as ordered by the court.

As set forth in the Scheduling Order and in Fed. R. Civ. P. 37(c)(1), if a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. Before imposing these

---

[7] Fed. R. Civ. P. 26(a), advisory committee's note (1993).

[8] *Id.*

sanctions, courts must first find that a party failed to disclose the information required by Rule 26(a) or Rule 26(e)(1).[9]

Here, the Liability Insurers acknowledge that B&V made its initial disclosures by the March 29, 2013 deadline.[10] Their dispute, however, rests on the alleged non-production of documents that detail B&V's claims against the Liability Insurers. The Liability Insurers concede that B&V has produced some documents. Nonetheless, the Liability Insurers assert that these documents fail to address each element of B&V's claims, incurred costs, and damages (e.g. incurred expenses, rebuild costs, or third-party damage information).

B&V disagrees and asserts that it has produced documents relating to its asserted claims and that the real dispute is about the reasonableness of production. B&V proclaims that it provided the Liability Insurers, their counsel, adjusters, and consulting experts access to the JBRs before the damaged property was torn out and during remediation. B&V also claims to have provided documents pertaining to estimates of costs for the claimed covered loss as well as details of the initial engineering, procuring, and constructing efforts.

Moreover, B&V avers that it produced over 9 gigabytes of data (almost 50,000 files) before this action commenced. After filing of this action, B&V claims it made available 98.7 gigabytes of data (approximately 531,000 files) it received from AEP and 350 gigabytes (more than one million files) from its electronically stored information.[11] In addition, B&V asserts it has provided detailed coverage analysis under the general liability excess policy with supporting documentation to the Liability Insurers. Also, the coverage analysis purports to address, among

---

[9] *See Asia Strategic Inv. Alliances LTD. v. Gen. Elec. Capital Servs., Inc.*, No. 95-2479-GTV, 1997 WL 122568, at *3 (D. Kan. Mar. 11, 1997) ("Before imposing sanctions pursuant to . . . [Rule 37(c)(1)], the court must first find a failure to disclose information required by Fed. R. Civ. P. 26(a) or 26(e)(1).").

[10] *See* Mem. in Supp. of Mot. for Disc. Order at 4, ECF No. 119; B&V's Certificate of Service of Rule 26(a)(1) Initial Disclosures, ECF No. 66.

[11] Mem. in Opp'n of Mot. for Disc. Order at ¶ 3, ECF No. 124.

other issues, the physical damage to internal components leading to the remediation work and to the AEP backcharges, estimates of remediation costs, determination of percentage completed for those projects still under construction at the time of the first occurrence, and a summary of claimed damages. B&V also claims to have provided an allocation of recoveries made from other sources (i.e. B&V's litigation with subcontractor MTI, as well as the payments received from other coverage sources and payments made by AEP) and credits to the losses sustained. Finally, B&V submits that it met with the Liability Insurers and its consultants and answered questions in connection with the loss incurred.

The Liability Insurers argue that the information B&V turned over still does not address the elements of its claims. They assert that the pre-litigation documents merely provide an estimate of costs incurred without showing what amount was spent, how it was spent, and whether B&V is legally liable for it. In addition, they purport that the documents provided after this litigation commenced (i.e. AEP documents, MTI documents, and accounting documents) do not include all the documents necessary to determine B&V's claim of damages. Moreover, the Liability Insurers assert that B&V refuses to run new search terms through the electronically stored information from the MTI litigation and will not produce data from its accounting files until it produces a damage report by B&V's consultant.

After examining the parties' briefs on this matter, the Court is unable to find that B&V failed to produce the documents required by Rule 26(a)(1) and the Scheduling Order. At this juncture, the Court simply is not in the position to determine whether the approximately 457.7 gigabytes of data B&V has made available to the Liability Insurers fails to contain such information. The Court declines to enter an order that might preclude the use of such documents under Rule 37(c)(1). The Court does, however, order B&V to supplement its initial disclosures

within fourteen (14) days from the date of this order if such disclosures are incomplete or contain incorrect information as described in Rule 26(e)(1)(A). B&V's supplemental disclosures shall particularly include a specific computation of each category of claimed damages and make available for inspection and copying the documents for which each computation it currently has in its possession, custody, or control.

The Court will address the parties' arguments regarding ESI production and search terms in its forthcoming order on B&V's Motion for Protective Order (ECF No. 131). In addition, the Court recognizes that the Liability Insurers' motion states that B&V also has not produced documents in response to requests for production propounded on B&V during discovery. However, it is unclear whether the Liability Insurers are seeking an order compelling production of these documents because their prayer for relief only pertains to precluding documents not initially disclosed. In addition, the Liability Insurers do not direct the Court to which specific requests for production for which they seek to compel or attach the requests to their briefs as required by D. Kan. Rule 37.1(a). As a result of the Liability Insurers' unsupported claim pertaining to requests for production of documents propounded on B&V, the Liability Insurers' request to preclude B&V from using these documents is denied.

### B.      Requests for Admission

The Liability Insurers assert that B&V improperly responded to several requests for admission and seek an order compelling amended responses or deem those requests admitted. Pursuant to Fed. R. Civ. P. 36, a party may serve on any other party a written request to admit the truth of any matters within the scope of Rule 26(b)(1) which relate to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents. Such requests serve "two vital purposes, both of which are designed to reduce trial

time. Admissions are sought, first to facilitate proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."[12] Generally, the purpose "is not to discover additional information concerning the subject of the request, but to force the opposing party to formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof."[13]

As set forth in Rule 36(a)(4),

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Any objections to a request must be stated and must not be made solely on the ground that the request presents a genuine issue for trial.[14] "Unless the court finds an objection justified, it must order that an answer be served."[15] If applicable, a requesting party may file a motion with the court to determine the sufficiency of an answer or objection.[16] A sufficient response must fairly meet the substance of the requested admissions.[17] Determining the sufficiency of a response is

---

[12] Fed. R. Civ. P. 36, advisory committee's note (1970); *see Bowers v. Mortg. Elec. Registration Sys.*, No. 10–4141–JTM–DJW, 2012 WL 2798801, at *2 (D. Kan. July 9, 2012) (stating that same).

[13] *Solis v. La Familia Corp.*, No. 10–2400–EFM–GLR, 2012 WL 1906508, at *2 (D. Kan. May 25, 2012) (citation omitted).

[14] Fed. R. Civ. P. 36(a)(5).

[15] Fed. R. Civ. P. 36(a)(6).

[16] *Id.*

[17] *Ash Grove Cement v. Emp'r Ins. of Wausau*, No. 05–2339–JWL, 2007 WL 2333350, at *2 (D. Kan. Aug. 17, 2007) (internal citation and quotation marks omitted).

within the discretion of the court.[18] "When ruling on a motion to determine the sufficiency of answers or objections to requests for admission, the court must consider the phraseology of the requests as carefully as that of the answers or objections."[19] "On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served."[20]

In this case, the Liability Insurers call the Court's attention to five distinct groups of allegedly improper responses. The first group pertains to B&V restating the request for admission, admitting the stated material, and then stating "otherwise denied." The second group relates to a set of requests for admission in which B&V responded, in part, by stating that it would provide future information. The third group is a set of requests pertaining to specific elements of damages sought from the Liability Insurers that B&V allegedly failed to either admit or deny. The fourth group pertains to a set of allegedly improper responses as to whether the Owners' claims were covered under the Property Insurers' policies, either generally or with respect to particular plants. The fifth group includes alleged miscellaneous deficiencies relating to Request Nos. 11 and 78 and other various requests.

1) **"Otherwise Denied" Responses—Requests Nos. 1-9, 20, 24, 28, 31, 34-36, 38, 40-45, 48, 51, 53, 58, 59, 62, 67, 69-72, 77, 85, 91, 96, 101, 116, 121, 127, 128, 132, 134, 138, 143, 146, 147, 150, and 151**

As an initial matter, "[t]he courts do not address the sufficiency of an answer unless they first find an asserted objection invalid or improper."[21] "A justified objection may eliminate the

---

[18] *Id.*

[19] *Id.* at *3 (citing *Audiotext Commc'ns Network, Inc. v. U.S. Telecom, Inc.*, Civ. A. No. 94–2395–GTV, 1995 WL 625744, at *2 (D. Kan. Oct. 5, 1995)).

[20] Fed. R. Civ. P. 36(a)(6).

[21] *Solis*, 2012 WL 1906508, at *2 (citing *Audiotext Commc'ns Network, Inc.*, 1995 WL 625744, at *4).

need for an answer."[22] The objecting party must specifically state the grounds for its objection.[23] The objecting party also has "the burden of persuasion to justify" the objection.[24] Courts will consider only those objections that were timely asserted and relied upon in response to a motion.[25] Objections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned.[26]

For a majority of the requests within this category, B&V initially responds by asserting boilerplate objections and then providing an answer subject to and without waiving those objections. Both parties only address these objections in passing throughout their briefs. B&V's arguments do not go beyond mere conclusory assertions for these particular requests within this category.[27] The Court finds that B&V has failed to justify its objections within this category, and therefore, responses are required.

Turning to B&V's responses, the Liability Insurers claim that the single most prevalent type of response is one in which B&V restates the request, admits the restated material, and then states "otherwise denied." The Liability Insurers purport that it is difficult to tell exactly what is

---

[22] *Solis*, 2012 WL 1906508, at *2; *See* Fed. R. Civ. P. 36(a)(6) ("Unless the court finds an objection justified, it must order that an answer be served.").

[23] Fed. R. Civ. P. 36(a)(5).

[24] *Moses v. Halstead*, 236 F.R.D. 667, 680 (D. Kan. 2006).

[25] *See Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135-JAR, 2007 WL 1364984, at *6 (D. Kan. May 9, 2007); *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB- DWB, 2007 WL 756631, at *10 (D. Kan. Mar. 8, 2007).

[26] *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 615 (D. Kan. 2005) (citing *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670 (D. Kan. 2004); *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 655, 662 (D. Kan. 1999)).

[27] The Court notes that B&V objected to Request No. 9 as vague and ambiguous and, subject to and without waiving its objections, admits in part to the request. *See* B&V's Resp. to Defs.' Req. to Admit at 7, ECF No. 119-1. B&V does specifically address this request in its brief but only argues that its qualified response was justified because the request was not straight forward. *See* Mem. in Opp'n of Mot. for Disc. Order at 9. ECF No. 124. However, B&V objections are unsupported, and therefore, overruled.

being admitted and what is being denied. They argue this approach is improper and wrongfully frustrates their ability to discover B&V's claims. B&V disagrees with this characterization and asserts that its responses are qualified admissions that are precise in scope, with the remainder of the request being denied.

After a review of each "otherwise denied" response, the Court finds that B&V's responses appear to be good faith qualified answers to fairly meet the substance of the requested admission as permitted under Rule 36.[28] The Court finds B&V's "otherwise denied" responses appear to be sufficient to put the Liability Insurers on notice of what is admitted and what is denied. The Liability Insurers shall consider admitted the portion that B&V admits or qualifies as admitted, and the remainder of their request is denied. In the event that any of B&V's responses merely restate the request and admit it, the Liability Insurers shall consider this response admitted. The Liability Insurers' request to compel amended responses or deem these requests admitted is hereby denied. Nevertheless, B&V shall supplement any of its responses as required under Rule 26(e) within fourteen (14) days of this order.

### 2) Promise of Future Information—Requests Nos. 74, 90, 95, 100, 105, 110, 115, 120, 129-131, 133, 137, and 142

Before examining the sufficiency of B&V's responses to these requests, the Court must first determine if B&V's met its burden to justify its objections to several of the requests within this category. Like the previous category, both parties only address these objections in passing. Further, to the extent B&V provides nothing more than unsupported boilerplate objections, the Court finds that B&V has failed to justify its objections to the requests within this category, and therefore, responses are required.

---

[28] *See Harris v. Oil Reclaiming Co.*, 190 F.R.D. 674, 677 (D. Kan. 1999) (finding defendant's response appropriate because it is a good faith qualification of the answer in order to fairly meet the substance of the requested admission); *see also* Fed. R. Civ. P. 36(a)(4) ("[W]hen good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest.").

The Liability Insurers contend that several of B&V's responses to their requests for admission directed at B&V's damages claim are insufficient because they merely promise to provide such information at an unspecified date. However, after reviewing each of the specific requests for admissions and B&V's responses, the Court finds B&V's responses are sufficient. In general, Request Nos. 74, 90, 95, 100, 105, 110, 115, and 120 ask B&V to admit that it communicated a specific amount of damages for each JBR at a particular time in the past. For each, B&V either admits or denies that it previously gave those respective amounts. B&V goes on further to state that it is amending and updating the previously provided documents to convert certain estimated costs into actual costs, which will be provided to the Liability Insurers. Even though it appears that B&V unnecessarily reiterates its obligation to timely supplement its initial disclosures under Rule 26(e), B&V's responses clearly admit or deny these particular requests.

The Court also finds B&V's responses to Requests Nos. 129-131, 133, 137, and 142 to be sufficient. In general, these requests relate to specific admissions about B&V's damages claim. B&V's responses either deny in part and admit in part,[29] or deny altogether. B&V also states that it is amending and updating the previously provided documents and claim numbers and will provide those to the Liability Insurers. Again, B&V appears to sufficiently respond to these requests and only merely reiterates its obligation to supplement. The Liability Insurers' request to compel amended responses or deem these requests admitted is hereby denied. The Court does, however, order B&V to supplement any of these requests as required under Rule 26(e).

---

[29] The Court notes that B&V's responses to Requests Nos. 129, 133, 137, and 142 assert objections and, subject to and without waiving those objections, admits in part and denies in part. B&V does not support these objections, and therefore, they are overruled.

### 3) Requests for Admission Relating to Specific Elements of Damages—Requests Nos. 18, 33, and 64

The Liability Insurers argue that B&V's responses to Request Nos. 18, 33, and 64 do not clearly admit or deny these requests, and therefore, are insufficient. The Court addresses each request separately.

Request No. 18 asks B&V to admit "that Black & Veatch does not seek to recover from the Defendants the costs of correcting defective work." B&V's responded by first objecting to the request as vague and ambiguous. B&V further explains that the term "costs of correcting defective work" is vague and ambiguous because it could mean the costs of replacing the defective components or the costs incurred as a result of correcting those defects (e.g. damaging non-defective components). The Court agrees that this request is vague and ambiguous on its face, and therefore, sustains B&V's objections. As a result, a response is not required. The Liability Insurers should take note that B&V's brief on this motion explains that it does not seek damages for the replacement of the defective work itself or certain defective components but "other costs incurred to correct these defects, including the cost to rip and tear non-defective work/components to get to defective work/components are clearly being sought by B&V . . . ."

Request No. 33 asks B&V to admit that it "only seeks compensation from Defendants for damages resulting from construction defects, and does not seek compensation for the cost of the defective material itself." B&V's responded by stating:

> B&V objects to this request on the grounds that it is vague and ambiguous. Subject to and without waiving said objections, the request is denied. B&V seeks compensation for all damages covered by Defendants' policies, which would also include, by way of example, damages falling within the terms of Endorsement No. 27 of the Aspen/Catlin policies. B&V admits that in an effort to settle this claim, it does not seek compensation for certain costs of defective materials, as set forth in document previously provided to Defendants.

Before addressing B&V's response, the Court again finds that B&V does not substantiate its vague and ambiguous objections either initially or in its response brief. Therefore, B&V fails to meet its burden to justify its objections, and consequently, a response is required. Turning to B&V's response, Request No. 33 does not appear to be so complex to warrant the qualified response by B&V, which does not appear to meet the substance of the request. This especially holds true given the fact that it appears that B&V does seek to recover some of the costs of correcting defective work. The Court finds that B&V's response fails to address the substance of the request and B&V is ordered to serve an amended response to this request within fourteen (14) days of this order.

Request No. 64 asks B&V to admit "that Black & Veatch seeks compensation from Defendants for the costs of accessing non-covered Jet Bubble Reactor internals in order to replace them." B&V responsed by stating:

> B&V objects to this request on the grounds that it is vague and ambiguous. Subject to and without waiving said objections, the request is denied, except B&V admits that its claim includes certain costs necessarily incurred to obtain greater access to the interior of the JBRs to allow the repair or replacement of damaged property, as set forth in documents previously provided to Defendants.

Again, B&V does not substantiate is vague and ambiguous objections, and therefore, these objections are overruled. Turning to B&V's response, B&V argues that a qualified response was necessary because of the language "non-covered Jet Bubble Reactor internals." B&V asserts that it is seeking compensation for accessing covered JBR internals, not non-covered JBRs. The Court agrees that a qualified response was necessary in this instance. The Liability Insurers' request to compel an amended response or deem this request admitted is denied.

4) **Requests for Admission Pertaining to the Owners' Claims and the Property Insurers' policies—Requests Nos. 47, 75, 83-84, 94, 99, 104, 109, 114, 119, 152-53**

The Liability Insurers argue that B&V insufficiently responded to requests for admission that ask B&V to admit the Owners' claims were covered under the Property Insurers' policies, either generally or with respect to particular plants. In response to these requests, B&V objected, arguing that the Liability Insurers seek a legal conclusion. For some of these requests B&V, subject to and without waiving its objections, provided qualified admissions. The Liability Insurers argue that B&V should fully respond to these requests because they are not pure issues of law.

Requests for admissions may ask the party to admit or deny the truth of any matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either.[30] A request to admit a pure matter of law is improper and objectionable.[31] An interpretation of what is covered under an insurance policy is generally a question of law.[32] Therefore, these requests that seek B&V to admit that the Owners' claims are covered under the Property Insurers' policies do not require a response by B&V. The Liability Insurers' request to compel amended responses or deem these requests admitted is denied.

---

[30] Fed. R. Civ. P. 36(a)(1).

[31] *C.R.K. v. U.S.D. 260*, No. 99–1301–WEB, 2000 WL 1477194, at *1 (D. Kan. Aug. 31, 2000).

[32] *See Emp'rs Reinsurance Corp. v. Jefferson Pilot Fin. Ins. Co.*, 176 F. Supp. 2d 1183, 1191 (D. Kan. 2001) (citing *AMCO Ins. Co. v. Beck*, 929 P.2d 162, 165 (Kan. 1996)) (applying Kansas law); *Allianz Ins., Co. v. Lerner*, 416 F.3d 109, 115 (2nd Cir. 2005) (citing *Hartford Accident & Indem. Co. v. Wesolowski*, 305 N.E.2d 907 (N.Y. 1973)) (applying New York Law). The Court notes that the parties do not address which state law applies in this matter. For purposes of this pending motion, the Court assumes that either Kansas law applies, New York law applies, or that no conflict exists between Kansas or New York law and the applicable state law.

### 5) Alleged Miscellaneous Deficiencies—Request Nos. 11 and 78 and Other Various Requests

The Liability Insurers argue that B&V's responses to Request Nos. 11 and 78 are insufficient for various reasons. Before turning to B&V's responses, the Court recognizes that B&V initially objected to Nos. 11 and 78 for being vague and ambiguous. Like several of B&V previous objections, B&V fails to provide any further explanation beyond mere boilerplate objections. These objections are overruled.

Request No. 11 asks B&V to admit "that in the resolution of the Midwest Towers Litigation, Black & Veatch received monies from three policy periods relating to the Commercial General Liability Coverage provided by the insurers for Midwest Towers." B&V admits that $500,000 of the payments received from MTI's primary general liability insurer was allocated to the 2009-2010 policy. However, MTI's insurers did not admit that the 2009-2010 policy was triggered. B&V also states "otherwise denied" in its response. The Liability Insurers claim that this answer is non-responsive. After reviewing B&V's response, it appears that B&V makes a qualified admission that it received monies for the 2009-2010 policy and denies the rest. This appears to respond to the substance of the matter as required under Rule 36. The Liability Insurers' request to compel an amended response or deem this request admitted is denied.

Request No. 78 asks B&V to admit "that Black & Veatch obtained the Owners' right of action against the Property Insurers as part of the Settlement referred to in Request to Admit No. 76." In response, B&V states that it "admits that it obtained certain rights of the Owners with respect to the Property Insurers, as set forth in documents previously provided to Defendants. To the extent this request is inconsistent with the agreements between the Owners and B&V, it is denied." After reviewing B&V's response, it appears that B&V does not address the substance of the matter requested. In addition, the request does not appear to be so complex to warrant a

qualified response by B&V. Therefore, the Court orders B&V to serve an amended response to this request within fourteen (14) days from the date of this order.

The Liability Insurers also argue that several denied requests for admission should be deemed admitted because they are "basic" questions in which B&V's only permissible response was to admit them.[33] However, the "election to admit or deny belongs to the party responding to the requests."[34] If at a later point, the Liability Insurers prove a denied matter is true, Rule 37(a)(2) provides the proper recourse.[35] That Rule States:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless: (A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit.

Accordingly, the Liability Insurers' request to deem these requests admitted is denied.

## C.    Interrogatories

The Liability Insurers assert that several of B&V's responses to the interrogatories they propounded on B&V were insufficient and incomplete. For this reason, the Liability Insurers request a court order requiring B&V to amend its responses to these specific interrogatories. Even though not specifically requested, the Court considers the Liability Insurers' motion for B&V to amend its interrogatory responses as a motion to compel under Rule 37(a). In this case, the Liability Insurers have divided the alleged deficiencies into the following three separate

---

[33] Reply in Supp. of Mot. for Disc. Order at 19-22, ECF No. 126.

[34] *Ash Grove Cement*, 2007 WL 2333350, at *2.

[35] *Id.*

groups: (1) responses that state information will be provided later, (2) responses referring to unspecified documents, and (3) answers that are allegedly unresponsive.

> **1.   Responses that State Information Will be Provided Later—First Set of Interrogatories Nos. 4, 7, 11, 12, 15, 16, 18, 19, and 30; and Second Set of Interrogatories Nos. 5, 6, 8, 9, and 11**

In general, First Set of Interrogatories Nos. 4, 7, 11, 12, 15, 16, 18, 19, and 30 and Second Set of Interrogatories Nos. 5, 6, 8, 9, and 11 seek information relating to B&V's claims for covered costs and allocation of recoveries. B&V asserts various objections to several of these interrogatories, including objections for being vague, ambiguous, overbroad, unduly burdensome, and protected by varies privileges (i.e. attorney-client privilege and the work-product doctrine). As previously stated, objections initially raised but not supported in the objecting party's response to the motion to compel are deemed abandoned.[36] The party objecting to the interrogatories has the burden to support its objections.[37] Both parties only generally discuss these objections, if at all. Therefore, the Court finds that B&V fails to carry its burden to support these objections. These objections are overruled.

In addition to asserting objections, B&V also provides responses to these interrogatories. The Liability Insurers assert that B&V's responses are insufficient because they state that B&V is in the process of amending and updating its previously provided information instead of identifying its claim.[38] B&V counters by arguing that it answered these specific interrogatories by relying on estimated damage figures previously provided to the Defendants. B&V concedes

---

[36] *Cardenas*, 230 F.R.D. at 615 (citing *Sonnino*, 221 F.R.D. at 670; *Cotracom Commodity Trading Co.*, 189 F.R.D. at 662).

[37] *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, No. 05-2164-MLB-DWB, 2007 WL 2192860, at *1 (D. Kan. July 25, 2007).

[38] *See* Mem. in Supp. of Mot. for Disc. Order at 15, ECF No. 119.

that its answers were largely based on estimates but promises to update such estimates with actual costs as these figures become available.

After reviewing these disputed interrogatories, the Court recognizes that B&V's answers include one of the following statements: (1) in accordance with Rule 33(d), the information sought may be determined by examining documents already in Defendants' possession or that are being produced to Defendants by B&V, and the burden of ascertaining the information is substantially the same for Defendants as it is for B&V, (2) B&V will provide further breakdown of how the monies identified have been allocated upon completing its final compilation of actual costs, or (3) B&V is preparing an updated and amended summary of its cost and will be provided to Defendants. The Court acknowledges that B&V may still be in the process of gathering actual damage figures. However, this does not permit B&V to withhold discoverable information that it may presently have in its possession, custody, or control.[39] Therefore, the Court orders B&V to supplement its responses to these interrogatories within fourteen (14) days from the date of this order with information it presently has in its possession, custody, or control.

### 2. Response Referring to Unspecified Documents—First Set of Interrogatories Nos. 3-5, 7-14, 17-19, 21-22, 24-27, and 29; and Second Set of Interrogatories Nos. 2, 4-6, 8-12, 16, and 18-20

Yet again, B&V responds to several of these specific interrogatories only after asserting objections on various grounds. However, B&V only provides conclusory assertions that these

---

[39] *Bradley v. Val-Mejias*, No. 00-2395-GTV, 2001 WL 1249339, at *2 (D. Kan. Oct. 9, 2001) ("The fact that a plaintiff may later supplement his interrogatory response with an expert report does not permit him to initially refuse to respond with whatever discoverable information he presently holds.").

interrogatories are vague and ambiguous.[40] As a result, B&V has failed to meet its burden to support these objections, and therefore, they are overruled.

Turning to B&V responses to these specific interrogatories, B&V makes the statement "in accordance with Rule 33(d), the information sought may be determined by examining the documents produced to Defendants by B&V, and the burden of ascertaining the information is substantially the same for Defendants as it is for B&V." The Liability Insurers argue that the burden of identifying such documents is not substantially the same for each party and, even if it was, B&V does not specify the records that must be reviewed. B&V, however, argues that in each instance where it asserts Rule 33(d), it also either gives a specific response to the interrogatory or identifies the documents where the information can be obtained.

After reviewing B&V's responses, a majority of the responses directly answer the interrogatories in addition to asserting Rule 33(d). The Court notes that several of these answers, however, state that B&V will further provide updated information in the future. Like the previous category of interrogatories, the Court orders B&V to supplement its responses to these interrogatories within fourteen (14) days from the date of this order with information it presently has in its possession, custody, or control.

Turning to the interrogatories for which B&V does not provide an answer (i.e. First Set of Interrogatories Nos. 25 and 26, and Second Set of Interrogatories No. 4), B&V states that such information can be determine by examining document it has produced or will be produced. Even though directing an interrogating party to business records is permissible, the responding party must specify the records in sufficient detail to enable the interrogating party to locate and

---

[40] The Court notes that B&V provides First Set of Interrogatories No. 2 as an example of the alleged vague and ambiguous nature of all these interrogatories. *See* Mem. in Opp'n of Mot. for Disc. Order at 16, ECF No. 124. However, B&V fails to support these objections beyond mere conclusory assertions.

identify such documents.[41] Also, the responding party must give the "interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries."[42]

B&V's response to First Set of Interrogatories Nos. 25 and 26 direct the Liability Insurers to numerous demand letters and other documents that have been produced, without much further detail. The Court finds these responses fail to satisfy the specificity requirement under Rule 33(d) by not providing sufficient detail to enable the Liability Insurers to locate and identify such documents. Because of the sheer number of documents involved in this litigation, further details (e.g. date of each document, its identity, and where it can be located) are necessary to meet the Rule 33(d) specificity requirement. B&V shall amend their answers to these specific interrogatories in compliance with Rule 33(d) within fourteen (14) days of this order and include any supplemental material as required under Rule 26(e), if applicable.

In addition, Second Set of Interrogatories No. 4 states that responsive documents are being produced and the answer may be determined by examining those documents. The Court is without knowledge if such responsive documents have been produced, and therefore, the Court orders B&V to either answer this interrogatory or provide the responsive documents to the Liability Insurers within fourteen (14) days of this order.

### 3. Alleged Nonresponsive Answers—First Set of Interrogatories Nos. 2, 20, 22, and 29; and Second Set of Interrogatories No. 14

First Set of Interrogatories No. 2 asks: "Do you contend that each backcharge stands as an 'Occurrence'? [sic] If you [sic] answer is in the negative, state your basis for seeking compensation for each backcharge." B&V responded by stating:

---

[41] Fed. R. Civ. P. 33(d).

[42] *Id.*

> B&V objects to this Interrogatory on the grounds that it is vague, ambiguous and overbroad. Subject to and without waiving the foregoing objections, B&V does not contend that each backcharge stands as an "Occurrence," as that term is defined in the Policies. Rather, the backcharges represent liability imposed upon B&V for property damage caused by an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which liability is covered under Policies.

The Liability Insurers argue that B&V's response is "clearly evasive" because B&V's statement that "the backcharges represent liability imposed upon B&V for property damage caused by an accident, including continuous or repeated exposure to substantially the same general harmful conditions" is the definition of "Occurrence."

As an initial matter, B&V does not substantiate its objections beyond mere conclusory assertions, and therefore, the Court overrules its objections. The Court next turns to B&V's response to this contention interrogatory. The plain meaning of B&V's response states that it does not contend that each backcharge stands as an "Occurrence." The Liability Insurers' argument that B&V later describes backcharges as "Occurrences" is unsupported. Without further information, the Court finds that B&V adequately answered this interrogatory.

First Set of Interrogatories No. 20 asks B&V to "State and identify the 'money damages' identified in Paragraph 94 of the Amended Complaint in this matter." B&V responds by incorporating its initial disclosures, providing a generalized definition of what it considers money damages, and incorporated its response to Interrogatory No. 4. On its face, this interrogatory appears to seek the type of information that is required by B&V's initial disclosures under Rule 26(a)(1)(A)(iii). Interrogatories are not meant to duplicate Rule 26(a)(1) initial disclosures.[43] In addition, B&V may respond to interrogatories with a specific reference to its

---

[43] *Williams v. Sprint/United Mgmt. Co.*, 235 F.R.D. 494, 503 (D. Kan. 2006) (citing *Hilt v. SFC, Inc.*, 170 F.R.D. 182, 187-88 (D. Kan. 1997); *Lawrence v. First Kan. Bank & Trust Co.*, 169 F.R.D. 657, 662, 664 (D. Kan. 1996)).

initial disclosures and corresponding documents.[44] However, as explained above, B&V's initial disclosures may not include the most current damage figures and corresponding documents. B&V shall amend its response to this interrogatory to the extent of providing supplemental information to its initial disclosures as required under Rule 26(e) with the information sought in this interrogatory. This supplementation, if warranted, shall be served within fourteen (14) days from the date of this order.

First Set of Interrogatories No. 22 generally asks B&V certain questions with respect to each backcharge, including the amount claimed. At the outset, B&V provides unsupported boilerplate objections (i.e. vague, ambiguous, and unduly burdensome). Accordingly, these objections are overruled. B&V's response also asserts Rule 33(d) and refers the Liability Insurers to documents it previously provided or documents B&V is in the process of producing. Some of the documents include: Outage Reports, Outage Backup Documentation, AEP claim and demand letters, Backcharge Summary provided in December 2009 and continuing through November 2010. In addition, B&V provides that "at least $7.5 million of the total backcharges are covered by Defendants' Policies."

The Liability Insurers claim that B&V's response lacks specifics as required under Rule 33(d)(1) for them to locate and identify said documents. In addition, the Liability Insurers argue that B&V's response only contains the bulk figure of $7.5 million for total backcharges instead of amounts for each backcharge. After a review of B&V's response, the Court finds it likely that B&V does not provide the Liability Insurers with sufficient detail to enable them to locate and identify the documents B&V lists. Specifically, B&V states a wide array of documents over an extended period of time (e.g. December 2009 to November 2010) without providing specific

---

[44] *Williams*, 235 F.R.D. at 504 (D. Kan. 2006) ("Plaintiffs may, however, answer the interrogatory with specific references to the documents listed in their original and supplemental Rule 26 disclosures.").

details that will enable the Liability Insurers to locate such document. In addition, this interrogatory asks for figures for each occurrence, not the total amount. Therefore, B&V shall amend its answer to this interrogatory to provide specific details about each backcharge claimed, the documents the Liability Insurers are to review to obtain that information, and/or provide a breakdown of each backcharge.

First Set of Interrogatories No. 29 asks B&V to "Identify all amounts which you are seeking from Defendants which were not part of the judgment entered in the Midwest Towers Litigation." B&V first responds by asserting boilerplate objections (i.e. vague, ambiguous, and unduly burdensome) that are unsupported, and therefore, are overruled. B&V next refers the Liability Insurers to unspecified documents currently in the Liability Insurers' possession or that are being produced. B&V further states that it "is seeking, among other things, attorneys' fees, interest and payment of certain supplementary payments that were not part of the judgment entered in the Midwest Towers Litigation." Like First Set of Interrogatories No. 20, this interrogatory appears on its face to seek the type of information that is required by B&V's initial disclosures under Rule 26(a)(1)(A)(iii). In addition, B&V's initial disclosures may not include the most current figures and corresponding documents. The Court therefore orders B&V to amend its answer for this interrogatory to the extent that it shall provide supplemental information to its initial disclosures with the information sought in this interrogatory as required under Rule 26(e). Likewise, B&V is directed to supplement its initial disclosures, if warranted, within fourteen (14) days from the date of this order.

Second Set of Interrogatories No. 14 asks:

> Are the claims being made by Black & Veatch different with respect to the Property Insurers and the Liability Insurers? If the claims and/or claim amounts being made against the Liability Insurers and the Property Insurers are different, state the amount of

the claim being made against the Liability Insurers for each operating unit, the amount of the claim being made against the Property Insurers for each operating unit, and explain the difference between what you contend is covered by the Property Insurers and the Liability Insurers for each operating unit.

Again, B&V responds by asserting unsupported boilerplate objections, and therefore, these objections overruled. B&V also states that the liability and property policies cover certain accidental and physical damages to the JBRs but the policies differ significantly and the court is asked to decide where the coverages overlap. B&V also states that it does not contend that the property policies cover defense costs, supplementary payment, or certain other costs covered by the Policies. B&V further incorporates its responses to Nos. 19 and 29 of the Liability Insurers' first set of interrogatories. After reviewing B&V's response, the Court finds that B&V does not address the substance of the interrogatory. B&V does not state whether its claims are different with respect to the Property and Liability Insurers or, if different, how they are different. Accordingly, the Court orders B&V to serve an amended answer providing specific information sought by this interrogatory within fourteen (14) days of this order.

### D.    Amend the Scheduling Order

The Liability Insurers also request the Scheduling Order in this matter be amended. B&V does not oppose such an amendment. After reviewing the record and the parties' current discovery disputes, the Court finds good cause exists to modify the current Scheduling Order in accordance with Fed. R. Civ. P. 16(b)(4). The parties shall submit a jointly proposed amended scheduling order within fourteen (14) days after the Court's forthcoming order on B&V's Motion for Protective Order (ECF No. 131) to *ksd_sebelius_chambers@ksd.uscourts.gov*.

## IV. Conclusion

The Court universally orders B&V to supplement any discovery response or Rule 26(a) disclosure as required by Rule 26(e), if applicable, within fourteen (14) days of this order. The Court denies the Liability Insurers' motion to compel amended responses to requests for admission or deem those requests admitted, except for Request Nos. 33 and 78. B&V shall serve amended responses to Request Nos. 33 and 78 within fourteen (14) days of this order. B&V shall also supplement its interrogatory responses, if applicable, within fourteen (14) days from the date of this order with information it presently has in its possession, custody, or control. The Court orders B&V to amend its answers to First Set of Interrogatories Nos. 25 and 26 in compliance with Rule 33(d) within fourteen (14) days of this order. Further, B&V shall either answer Second Set of Interrogatories No. 4 or provide the responsive documents to the Liability Insurers within fourteen (14) days of this order. B&V shall also amend its answer to First Set of Interrogatories No. 22 to provide specific details about the documents the Liability Insurers are to review pursuant to Rule 33(d) and/or provide a breakdown of each backcharge. Moreover, the Court orders B&V to serve an amended answer to Second Set of Interrogatories No. 14 within fourteen (14) days of this order.

The Court finds the parties should bear their own costs incurred as a result of the briefing on this motion.[45]

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants Aspen Insurance (UK) Ltd., Catlin Lloyd's Syndicate 2003, Liberty Mutual Insurance Europe (UK) Ltd.'s Motion for Discovery Order (ECF No. 118) is hereby granted in part and denied in part.

---

[45] *See* Fed. R. Civ. P. 37(a)(5)(C) (stating that when a motion to compel is granted in part and denied in part, the court may apportion expenses).

**IT IS FURTHER ORDERED** that within fourteen (14) days from the date of this order, B&V shall supplement or amend its disclosures or responses to discovery requests as directed in this Memorandum and Order.

**IT IS SO ORDERED.**

Dated this 28th day of February, 2014, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge