**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

BLACK & VEATCH CORPORATION,          )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )          Case No. 12-2350-SAC
                                     )
ASPEN INSURANCE (UK) LTD, *et al.*,  )
                                     )
                    Defendants.      )

## MEMORANDUM AND ORDER

As seen too frequently regarding matters involving electronically stored information

("ESI"), counsel in this case have been unable to cooperate to resolve their discovery disputes

without court intervention.[1] Therefore, this matter comes before the Court upon Plaintiff Black &

Veatch's ("B&V") Motion for Protective Order and Request for Discovery Conference (ECF No.

131). Defendants Aspen Insurance (UK) Ltd., Catlin Lloyd's Syndicate 2003, Liberty Mutual

Insurance Europe (UK) Ltd. (collectively, the "Liability Insurers"); and Defendant Associated

Electric & Gas Insurance Service ("AEGIS") timely filed a response to the present motion.

Defendant Factory Mutual Insurance Company ("FMIC") filed an untimely response[2] indicating

that it joins in and incorporates by reference the legal arguments and factual averments contained

in AEGIS's response.[3] However, no substantial delay or prejudice was created by FMIC's

untimely response because the Court must address AEGIS's arguments regardless. Therefore,

---

[1] *See, e.g.*, *Chura v. Delmar Gardens of Lenexa, Inc.*, No. 11-2090-CM-DJW, 2012 WL 940270, at *1 (D. Kan. Mar. 20, 2012) (citing David J. Waxse, *Cooperation—What Is It and Why Do It?*, XVIII Rich. J.L. & Tech. 8 (2012), http://jolt.richmond.edu/v18i3/article8.pdf).

[2] Pursuant to D. Kan. Rule 6.1(d)(1), responses to non-dispositive motions must be filed and served within fourteen (14) days. Defendant FMIC's response brief was filed after this deadline. "Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum." D. Kan. Rule 7.4(b). The court ordinarily will consider and decide the motion as an uncontested motion and grant it without further notice. D. Kan. Rule 7.4(b).

[3] *See* Def. FMIC's Resp. to Pl.'s Mot. for Protective Order at 1, ECF No. 145.

FMIC shall be allowed to incorporate the legal arguments and factual averments contained in AEGIS's response as its own.

As more thoroughly explained below, B&V's present motion asks the Court to resolve discovery disputes relating to its ESI production. For the following reasons, the Court hereby denies in most respects B&V's motion.[4]

## I.    Background

The extensive background of this lawsuit is recounted in the Court's prior Memorandum and Order and familiarity is presumed.[5] In brief, B&V entered into a series of agreements with American Electric Power Service Corporation ("AEP") in its own capacity and/or as agent for other power companies (collectively, the "Owners"), to engineer, procure material and equipment for, and construct several wet flue gas desulfurization systems, also known as jet bubble reactors ("JBRs"), for four power plants. After construction of the JBRs, the Owners alleged significant defects to the JBR components. B&V entered into an agreement with the various Owners and paid them a lump-sum for repair costs and also agreed to replace defective components. The total amount incurred by B&V was several millions of dollars. To recover some of the incurred costs, B&V submitted a claim to its professional liability carriers. Further, B&V subsequently filed suit against MTI, a subcontractor who performed work on the JBRs. B&V also brought this breach of contract and declaratory judgment action against various insurance providers seeking damages and an adjudication of rights, duties, and obligations under certain insurance policies.

---

[4] The Court finds that B&V's requests for a discovery conference or, in the alternative, appointment of an ESI master to be unnecessary at this time and, therefore, these requests are denied.

[5] Mem. & Order at 1-3, ECF No. 162.

The insurance policies provided by the various insurers are divided into liability coverage and property coverage. Zurich Insurance Company provided the primary layer of general liability coverage. Defendants Aspen Insurance (UK) Ltd. and Catlin Lloyd's Syndicate 2003 provided a first layer of excess liability coverage. Defendant Liberty Mutual Insurance Europe (UK) Ltd. provided a second layer of excess liability coverage. In addition to B&V's liability coverage, AEP and the various Owners of the power plants procured property insurance from Defendants FMIC and AEGIS (collectively, the "Property Insurers") and Energy Insurance Services, Inc. Energy Insurance Services, Inc. has subsequently been dismissed from this matter.

Turning to the current ESI dispute, B&V alleges that it maintains ESI in the following locations: Documentum, custodian hard drives, and Accounting and Field Management System. Documentum is the equivalent of a "central filing" for ESI. It is an electronic document management program organized and maintained on a project-by-project basis. Documentum includes separate databases for the original JBR installations at each project, one for the overall remediation effort, and one for each JBR remediation project. The custodian hard drives include the hard drives where B&V's personnel maintain their email and other documents. While Documentum databases relate to specific JBR projects, the custodian hard drives may have the individual's data for any project he or she might have worked on at any given time. A certain number of custodians have promoted much of their ESI stored on their hard drives to Documentum. However, some email and documents may still be retained solely on the custodian's hard drive. B&V also states that the Accounting and Field Management System includes ESI pertaining to an accumulation of project costs and accounting data.

In July 2010, B&V harvested data in connection with the litigation involving MTI from Documentum and 31 custodian hard drives relating to the initial JBR construction projects. This

data harvest resulted in approximately 350 gigabytes of data after utilizing the search terms agreed to by B&V and MTI. B&V contends that it spent approximately $600,000 for the MTI production, storage, and privilege review. Before the present litigation began, B&V alleges that it produced over 9 gigabytes of data from files relating to both the initial and the remediation JBR projects to the Defendants. Since the filing of this action, B&V alleges to have made available to the Defendants 98.7 gigabytes of data received from AEP plus the approximately 350 gigabytes of data produced in the MTI litigation. Despite this production, B&V has not produced any additional ESI created before or after July 2010 relating to the original construction and remediation JBR projects. B&V does not dispute that there is relevant information in the post-July 2010 data, but it argues that the respective Defendants' proposed search terms are too broad.

## II.      Procedural Conference Requirement

Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2 require a moving party, in good faith, to confer with opposing counsel before filing a motion to resolve any discovery disputes. When a motion is filed, it "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[6] The duty to confer generally requires counsel to "converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."[7] In this case, B&V certifies that the parties have conferred in good faith on multiple telephone conferences and numerous rounds of correspondence to resolve the issues that are the subject to this motion, but have reached an impasse. While the Court recognizes the efforts of the parties to meet and

---

[6] Fed. R. Civ. P. 37(a)(1).

[7] D. Kan. Rule 37.2.

confer regarding the current discovery issue and finds that such efforts satisfy the meet-and-confer requirement, the Court reminds counsel that these conversations require the parties to cooperate with one another. After reviewing email correspondence between the parties, a lack of cooperation was occasionally evident to the Court.[8] Cooperation is necessary in this complex litigation involving vast amounts of ESI in which the parties are in the best position to balance its relevancy and burden of production. "The cooperation process should involve information sharing and dialogue in an attempt to resolve discovery disputes without the necessity of the Court ruling on each issue in dispute."[9] The parties should continue to strive for such cooperation throughout this litigation.

### III.    Discussion

Pursuant to Fed. R. Civ. P. 26(c), a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" The decision to enter a protective order is within the court's discretion.[10] In fact, the Supreme Court recognizes that "[t]he trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery. The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders."[11] Despite this broad discretion, "a protective order is only warranted when the movant demonstrates that protection is

---

[8] As one attorney stated in response to an opposing attorney's email, "I hardly got past the first paragraph [of your response] before the laughter of frustration set in." Ex. F. at 9, ECF No. 119-6 (email correspondence attached to Motion for Discovery Order (ECF No. 118) but relating to the ESI dispute currently before the Court).

[9] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2012 WL 234024, at *5 (D. Kan. Jan. 25, 2013); *see The Sedona Conference Cooperation Proclamation* (2008), https://thesedonaconference.org/cooperation-proclamation. This Court has endorsed The Sedona Conference Cooperation Proclamation. The Sedona Conference is a nonprofit legal policy research and education organization that is comprised of judges, attorneys, and electronic discovery experts who are dedicated to resolving electronic document production issues.

[10] *Thomas v. Int'l Bus. Machs.*, 48 F.3d 478, 482 (10th Cir. 1995).

[11] *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) (internal citation omitted).

necessary under a specific category set out in Rule 26(c)."[12] In addition, the party seeking a protective order bears the burden of establishing good cause.[13] To do this, the movant must make "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[14] Additionally, courts are "mindful that the discovery rules are also subject to the injunction of Rule 1 that they be construed to secure the just, speedy, and inexpensive determination of every action."[15]

In this case, B&V seeks protection from conducting a new search in Documentum for ESI that existed at the time of the July 2010 data harvest relating to the original JBR installations. B&V also requests protection from searching Documentum in the manner suggested by Defendants for ESI related to the original installation and remediation projects that were added to Documentum after the July 2010 harvest. Moreover, B&V argues that protection is necessary from harvesting data from custodian hard drives it has not designated and in the manner Defendants propose to search such hard drives. Finally, B&V requests protection from producing interim accounting ESI from B&V's Accounting and Field Management System.

### A.    Production of ESI in Documentum

Defendants request B&V to search Documentum for data that existed prior to the July 2010 harvest using search terms other than or in addition to those used in the MTI litigation. However, the parties' proposed search terms for this search and all other disputed ESI data searches described herein differ among themselves—each party proposes their own search

---

[12] *Herrera v. Easygates, LLC*, No. 11-CV-2558-EFM-GLR, 2012 WL 5289663, at *2 (D. Kan. Oct. 23, 2012) (citing *Aikens v. Deluxe Fin. Servs., Inc.*, 217 F.R.D. 533, 534 (D. Kan. 2003)).

[13] *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 244 (D. Kan. 2010).

[14] *Aikens*, 217 F.R.D. at 534 (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981)).

[15] *In re Urethane Antitrust Litig.*, No. 04-MD-1616-JWL, 2010 WL 4226214, at *3 (D. Kan. Oct. 21, 2010) (internal quotation marks and citation omitted); *see* Fed. R. Civ. P. 1.

terms.[16] Defendants also request B&V to run their respective search terms through Documentum databases for information added after the July 2010 harvest relating to the original installation and remediation projects. B&V opposes using both Defendants' respective search terms and proposes its own list.

Beginning with the pre-July 2010 data, B&V argues that it has already produced over 350 gigabytes from Documentum relating to the original JBR installation making it unreasonable and excessively expensive to conduct further searches. B&V purports that the 350 gigabytes of data is more than sufficient and reasonable to comprise its ESI production involving B&V's and MTI's performance on the JBR projects, the "occurrence," and the resulting damages. In addition, B&V asserts that some of the search terms (e.g. "calculations," "contingency," "contract," or "credit") are unduly broad with little prospect of returning substantive data. B&V argues that Defendants' search terms would lead to unnecessary costs and duplicative document production. B&V is unable to give an estimate of costs of producing data using Defendants' respective search terms but expects it would be several hundred thousand dollars. B&V does state that it spent approximately $600,000 for the production, storage, and privilege review of ESI in the MTI litigation.

In the alternative to resolving the search term differences for pre-July 2010 data, B&V proposes shifting some of the costs to Defendants. B&V offers to produce the Documentum databases in their entirety after privileged material and work product is removed and after a clawback agreement is in place. Defendants would then pay for all costs associated with the additional production arising from Defendant's allegedly expansive search terms.

Turning next to Defendants' post-July 2010 data request, B&V is willing to harvest this data from Documentum but only to the extent of using reasonable search terms agreed upon by

---

[16] *See generally* The Parties' Proposed Search Terms, ECF No. 132-1.

all parties. B&V has agreed to use some, but not all, of Defendants' proposed search terms. B&V asserts that its own proposed search terms are sufficiently broad to comply with its obligations under the Federal Rules. At their last meet-and-confer conference, B&V purports that it offered to run the Property Insurers' proposed search terms against all Documentum data post-July 2010, but this offer was refused by the Liability Insurers.

As an alternative to resolving the search term differences for post-July 2010 data, B&V again proposes shifting some of the costs to Defendants. B&V offers to produce all Documentum databases after privileged material and work product is removed and a clawback agreement is in place. B&V would then pay fifty percent of the costs associated with the search and production of data related to post-July 2010 ESI. The remaining balance would be paid by Defendants.

Defendants argue that B&V has failed to make a particular and specific demonstration of fact concerning any undue burden or expense in producing any ESI, either pre or post July 2010. Defendants highlight that B&V has not submitted any affidavits or provided any other detailed explanation as to the nature and extent of its claimed burden or expense. The Court agrees.

As explained above, Plaintiff bears the burden to establish good cause for the entry of a protective order by providing a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. "[A]n affidavit or other evidentiary proof is the best way for a party to demonstrate undue burden under Rule 26(c), but, at a minimum, the party must provide a detailed explanation as to the nature and extent of the claimed burden or expense."[17] A mere conclusory statement that it would cost a party tens or hundreds of thousands

---

[17] *In re Urethane Antitrust Litig.*, 2010 WL 4226214, at *4 (internal quotation marks omitted) (citing *Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL-DJW, 2005 WL 327144, at *3 (D. Kan. Feb. 3, 2005)).

of dollars does not satisfy a party's burden to make a specific demonstration of fact in support of its request for a protective order.[18]

The Court finds that B&V's undue burden and expense argument to be unsupported and conclusory. B&V does not detail the monetary expenses it will face by producing the ESI requested by Defendants. The only mention of an estimated dollar figure comes from B&V's reply brief where it states that production of such ESI in this case will cost several hundred thousand dollars. However, B&V does not substantiate this claim or explain how ESI production will create an undue burden or expense. No estimate of hours and cost per hour to produce or review such information was provided. No affidavit detailing the costs of production was provided. No indication that additional software would be necessary to access such information was provided. In fact, nothing was provided beyond the conclusory statement that it will cost several hundred thousand dollars. Further, B&V tries to demonstrate the potential costs it faces by stating that it spent approximately $600,000 in discovery production in the MTI litigation. B&V, however, does not show how the MTI expenses relate to this matter, especially given the fact that the MTI litigation involved different claims against different defendants.

The Court does recognize that several of the respective parties' proposed search terms (e.g. "141644.72.3609," "AO," "Ashland," "Black & Veatch," "Chiyoda," etc.) were already used in the July 2010 MTI harvest.[19] Those documents have been produced to the Defendants. In

---

[18] *Aikens*, 217 F.R.D. at 537 ("Defendant's mere conclusory statement that it would cost tens or hundreds of thousands of dollars to complete this task [(i.e. reviewing documents and preparing a privilege log)] does not satisfy Defendant's burden to make 'a particular and specific demonstration of fact' in support of its request for protective order.").

[19] *See generally* The Parties' Proposed Search Terms, ECF No. 132-1.

an effort to minimize expense and prevent duplication of documents already produced,[20] B&V need not search pre-July 2010 data with search terms that were already used in the July 2010 harvest if it so chooses. Despite this limited protection for pre-July 2010 data, Plaintiff's motion for protective order is denied.

### i.     *Cost-Shifting*

B&V's alternative proposal to shift some of the uncalculated ESI costs onto Defendants is also denied. As set forth in this District's Guidelines for ESI,

> Absent a contrary showing of good cause, *e.g.*, Fed. R. Civ. P. 26(b)(2)(c), the parties should generally presume that the producing party will bear all costs for reasonably accessible ESI. The parties should generally presume that there will be cost sharing or cost shifting for ESI that is not reasonably accessible.[21]

Under Fed. R. Civ. P. 26(b)(2)(C)(iii), courts must limit discovery if the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues. Fed. R. Civ. P. 26(b)(2)(B) addresses specific limitations on ESI when identified as not reasonably accessible because of undue burden or cost. This section provides that, on a motion for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost.[22]

---

[20] Fed. R. Civ. P. 26(b)(2)(C)(i) requires a court to limit the frequency or extent of discovery if the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.

[21] The United States District Court for the District of Kansas, *Guidelines for Case Involving Electronically Stored Information [ESI]*, 5 (July 18, 2013), http://www.ksd.uscourts.gov/guidelines-for-esi/.

[22] Fed. R. Civ. P. 26(b)(2)(B); Fed. R. Civ. P. 26(b)(2), advisory committee's note (2006) ("If the parties do not resolve the issue [of whether, or on what terms, sources identified as not reasonably accessible should be searched and discoverable information produced] and the court must decide, the responding party must show that the identified sources of information are not reasonably accessible because of undue burden or cost.").

"If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery."[23] "One of these conditions may be shifting the cost of discovery."[24] As explained by Magistrate Judge Kenneth G. Gale,

> While the general rule is that a party should bear the costs of producing discovery, the Court may consider numerous factors to determine whether to shift that cost to the requesting party, including whether the information is stored in an accessible or inaccessible format, and factors including (1) the specificity of the discovery request, (2) the quantity of information available from other and more easily accessed sources, (3) the failure to produce relevant information that seems likely to have existed, (4) the likelihood of finding relevant, responsive information that cannot be obtained from other, more easily accessed sources, (5) predictions as to the importance and usefulness of the further information, (6) the importance of issues at stake in the litigation and (7) the parties' resources.[25]

As thoroughly described above, B&V fails to show that the disputed ESI production is inaccessible because of undue burden or cost. B&V's only mention of costs to produce ESI in this case is conclusory and unsubstantiated. Additionally, B&V does not claim any expenses for the purchase of additional software or other technology to access or restore the data. In fact, it appears that B&V faces no technological hurdles at all. Moreover, the Court finds that the factors to consider when determining whether to shift that cost to the requesting party do not weigh in B&V's favor. Particularly, the information appears to only be available in Documentum and not a more easily accessible source. Further, B&V agrees in some respects that the information

---

[23] Fed. R. Civ. P. 26(b)(2)(B).

[24] *Hudson v. AIH Receivable Mgmt. Servs.*, No. 10-2287-JAR-KGG, 2011 WL 1402224, at *1 (D. Kan. Apr. 13, 2011).

[25] *Hudson*, 2011 WL 1402224 at *1 (citing Fed. R. Civ. P. 26(b)(2), advisory committee's note (2006); *see also Semsroth v. City of Wichita*, 239 F.R.D. 630 (D. Kan. 2006)).

sought is relevant to this litigation, particularly with post-July 2010 data.[26] The information

sought also goes towards the crux of the issues in this matter (e.g. rebuild costs, allocation of

money, and B&V's recoveries). Finally, the Court has no reason to believe that B&V lacks the

resources to produce such information, especially given the probable costs each party will incur

in this litigation. B&V's alternative request to shift some of the cost of ESI production to

Defendants is denied.

### ii.    *Clawback Provision*

Another alternative B&V proposes to minimize the costs associated with ESI production

is for the parties to enter into a clawback agreement. While a protective order is not warranted on

the present motion, the Court believes that this case may benefit from the entering into a

clawback agreement for the particular ESI production described above. In fact, "many parties to

document-intensive litigation enter into . . . 'claw-back' agreements that allow the parties to

forego privilege review altogether in favor of an agreement to return inadvertently produced

privileged documents."[27] These arrangements typically involve the return of attorney-client

privileged documents or protected work product without waiver.[28] As discussed in the 2006

advisory committee notes to Rule 26(f), parties occasionally enter into clawback agreements in

an attempt to minimize the costs and delays of privilege review, particularly with ESI

production. These agreements "can facilitate prompt and economical discovery by reducing

---

[26] *See* Mem. in Supp. of Mot. for Protective Order at 8, ECF No. 132 ("B&V is not contending that no relevant data is in the post-July 2010 data, but rather the search terms do not need to be as broad as those that were applied to the initial construction project data.").

[27] *Rajala v. McGuire Woods, LLP*, No. 08-2638-CM-DJM, 2010 WL 2949582, at *3 (D. Kan. July 22, 2010) (quoting *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003)).

[28] *Rajala*, 2010 WL 2949582 at *3.

delay before the discovering party obtains access to documents, and by reducing the cost and burden of review by the producing party."[29]

While the Court refrains from entering a clawback provision based upon the present motion, the parties may, if warranted, want to explore this option specifically for ESI harvested after running the parties' respective search terms as described herein. The Court notes that the parties have already agreed to a general clawback provision as set forth in the Court's March 19, 2013 protective order.[30]

### iii.    *Overly Broad Search Terms*

The Court acknowledges that some of Defendants' search terms (e.g. "calculations," "contingency," "contract," or "credit") may be overly broad. However, courts generally decline to enter a protective order on this basis. As explained by Magistrate Judge David J. Waxse,

> A party may obtain a protective order only if it demonstrates that the basis for the protective order falls within one of the categories enumerated in Rule 26(c). In other words, the protective order must be necessary to protect the party from "annoyance, embarrassment, oppression or undue burden or expense."
> . . .
> Overbreadth, however, is not one of the grounds enumerated in Rule 26(c) that will support a request for protective order. While it is an objection that may be asserted in responding to a discovery request, it simply is not a basis upon which the Court may enter a Rule 26(c) protective order.[31]

For this reason, the Court declines to enter a protective order on this separate basis.

---

[29] Fed. R. Civ. P. 26(f), advisory committee's note (2006).

[30] Protective Order at 6-7, ECF No. 60.

[31] *Aikens*, 217 F.R.D. at 534-35; *see In re Urethane Antitrust Litig.*, 2010 WL 4226214 at *2 ("Rule 26(c) does not give the court leave to enter a protective order to protect a party from having to provide discovery on topics merely because those topics are overly broad or irrelevant, or because the requested discovery is not reasonably calculated to lead to the discovery of admissible evidence." (internal citations omitted)).

## B.    Custodian Hard Drives

The Defendants also seek ESI from B&V's custodian hard drives. B&V requests protection from disclosing ESI from certain custodian hard drives and in the manner Defendants, namely the Liability Insurers, request. B&V first argues that Defendants' proposed search terms will return data from its custodian hard drives from other projects unrelated to the JBRs in this matter. B&V also argues that running Defendants' proposed search terms through the custodian hard drives would create duplicative data because the same information would also be culled from Documentum. As B&V explains, its employees promoted email and other JBR documents to Documentum, and therefore, running the same search terms through Documentum and the custodian hard drives would produce two of the same electronic documents.

Next, B&V asserts that the Liability Insurers' proposed list of custodians (60 individuals) is overly broad, unreasonable and unduly burdensome on its face. B&V only agrees to a "proposed list of 23 custodians who represent the key participants in the remediation projects and the procurement of insurance coverage."[32] The Property Insurers agree to B&V's proposed list subject to the right to request additional custodians if the need arises.[33] B&V also refuses additional searches of the custodian data that existed as of the July 2010 harvest, some of which have been produced to the Defendants. Finally, B&V requests that if ESI is to be culled from the custodian hard drives, a determination should be made as to whether the individual custodian maintains a folder for the JBR projects in dispute on his or her hard drive. If the custodian does maintain a separate folder per JBR project, then production of ESI should be limited to those folders. If the custodian does not maintain a separate folder, then additional filters should be

---

[32] Pl.'s Mem. in Supp. of Mot. for Protective Order at 9, ECF No. 132.

[33] The Parties' Proposed Custodian List at 1, ECF No. 132-2.

added to return data pertinent to the JBR projects (i.e. the project numbers, project names, and/or specific domain names if searching email).

In response, the Liability Insurers argue that asking for documents from 60 individuals is reasonable on its face in a $70 million coverage dispute involving several power plants where B&V's personnel list (i.e. all persons who billed over 40 hours or more to the JBR projects at issue) names a total of 467 persons. Included among the Liability Insurers' proposed custodian list allegedly are B&V employees with over 5,000 hours billed to the JBRs. Additionally, the Liability Insurers argue the existence of relevant electronic documents from B&V custodians that were not subject to the July 2010 harvest (e.g. documents from B&V's warranty specialist). Further, the Liability Insurers contend that B&V fails to show how it arrived at its proposed list of 23 "key" custodians for post-July 2010 material.

While the Court can speculate that Defendants' search terms for the custodian hard drives may return irrelevant data and/or duplicative data, B&V does not make a particular and specific demonstration of fact to show precisely how this may occur. The only example which B&V alleges would produce irrelevant data is the search term "agitator," a term that B&V's custodians apparently use in several other projects that are not the subject of this litigation. However, B&V itself includes the search term "agitator" on its list of proposed search terms.[34] Therefore, the Court is at a loss as to which of the over 400 cumulative search terms proposed by the respective parties will indeed return irrelevant data. Further, as set forth above, B&V may object to producing irrelevant information when responding to a discovery request but these objections are not a basis upon which the Court may enter a Rule 26(c) protective order.

---

[34] The Parties' Proposed Search Terms at 1, ECF No. 132-1. The Court notes that this is the only list of proposed search terms provided and, therefore, the Court assumes this list also applies to custodian hard drives.

Additionally, B&V alleges that "*much of* the local hard drives will be duplicative of the Documentum data."[35] B&V does not, however, provide the Court with the amount of or what specific data from its custodians was actually promoted to Documentum. B&V does not even provide this Court with the names of the 31 custodians who promoted ESI to Documentum before the July 2010 harvest and how they are connection to this matter. Again, B&V fails to substantiate this claim and demonstrate how protection is warranted under one of the Rule 26(c) categories or under Rule 26(b)(2)(C).

Turning to B&V's argument that the Liability Insurers' proposed list of 60 custodian hard drives are overly broad, unreasonable, and unduly burdensome on its face, the Court finds that the only asserted ground that may warrant a Rule 26(c) protective order is undue burden.[36] Primarily a request for production is unduly burdensome on its face if it is "it is couched in such broad language as to make arduous the task of deciding which of numerous documents may conceivably fall within its scope."[37] This is not present here as the Liability Insurers clearly provide a distinct list of custodian hard drives to search with their proposed search terms. In addition, the Court is unable to determine the burden of searching the Liability Insurers' proposed list of custodians on the face of their request. B&V fails to substantiate this claim. Besides providing the Court with the title of employment for some of the custodians, the Court is without any information to determine the custodians' job duties, their involvement with the facts at issue in this case, or whether they potentially have relevant information on their hard drives. B&V fails to show the amount of data each custodian has maintained on their hard drive or how

---

[35] Pl.'s Mem. in Supp. of Mot. for Protective Order at 9, ECF No. 132 (emphasis added).

[36] Even if B&V's other arguments were proper under Rule 26(c), the Court finds that they are not apparent on their face, and B&V fails to substantiate these claims.

[37] *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005) (applying to a motion to compel discovery).

much time and resources would be necessary to gather such information. Beyond B&V's mere conclusory assertion, this Court is left with little to determine the burden or expense of producing information from these custodian hard drives. Therefore, based upon B&V's failure to make a particular and specific demonstration of fact, B&V's motion for protective order, as it relates to B&V's custodian hard drives to be produced, is denied.

B&V also requests the Court to find its proposed method of searching its custodian hard drives to be proper. As described above, this proposal requires a determination of whether the custodian maintains a separate electronic folder for each JBR projects. If they do, then the ESI production should be limited to that folder. If they do not, then additional filters should be added to return data more pertinent to the JBR projects at issue in this case. None of the Defendants address this proposal in their respective response briefs. B&V, however, stated that the Defendants have expressed some interest in this method but they, particularly the Liability Insurers, may not agree to B&V's proposed additional filters. In general, this proposed method appears to be directly in line with Fed. R. Civ. P. 1, which requires the "just, speedy, and inexpensive determination of every action and proceeding." The specifics of B&V's proposal, particularly the additional filters, needs to be discussed among the parties. The parties shall meet and confer within fourteen (14) days of the date of this order regarding the proper method to search the custodian hard drives. Any further motions asking the Court to resolve issues relating to the search for data maintained in custodian hard drives shall include a detailed explanation of the efforts made by counsel to resolve this dispute before filing, if agreement cannot be reached.

### C.      B&V's Accounting and Field Management System

B&V also seeks protection from producing electronic interim accounting reports regarding the costs of the JBR projects, arguing that such production would be wasteful,

expensive, and burdensome. B&V purports that this accounting data is updated and adjusted on a month-to-month basis and does not reflect a final accounting of costs. B&V acknowledges that accounting ESI is relevant but it is only the final costs that make up the damages it claims, which have been produced to Defendants. Defendants dispute that final damages documents have been produced. Defendants, particularly the Liability Insurers, instead argue that B&V has only produced a spreadsheet summary of costs that does not include the final costs documents. The Liability Insurers assert that this lack of information prevents them from assessing the fundamental issue of amount of damages claimed by B&V.

Again, for a court to enter a protective order, the moving party must demonstrate that protection is necessary under a specific category set out in Rule 26(c)—annoyance, embarrassment, oppression, or undue burden or expense.[38] The movant bears the burden to show good cause by setting forth "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements."[39] Here, B&V argues that producing interim accounting ESI would create an undue burden or expense. However, B&V does not substantiate how producing such information does, in fact, create an undue burden or expense. Even if these documents are created on a month-by-month basis, this does not show an undue burden or expense on its face. B&V fails to provide anything beyond conclusory statements. Moreover, B&V readily admits that accounting ESI is relevant.[40] Based upon this limited information, the Court finds that B&V has failed to show good cause to enter a protective order regarding interim

---

[38] *Herrera*, 2012 WL 5289663 at *2.

[39] *Aikens*, 217 F.R.D. at 534 (quoting *Gulf Oil Co.*, 452 U.S. at 102 n.16 (1981)).

[40] *See* Pl.'s Mem. in Supp. of Mot. for Protective Order at 11, ECF No. 132 ("Accounting ESI is relevant but it is only the final costs that make up the damage claim, and those final costs have been provided to Defendants.").

accounting ESI. B&V's motion for protective order with regard to interim accounting information is denied.

Further, as explained in the Court's previous Memorandum and Order,[41] B&V shall timely supplement its initial disclosures as required under Rule 26(e). Rule 26(a)(1)(A)(ii) requires disclosure of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control which may be used to support its claim or defenses, unless the use would be solely for impeachment. Rule 26(a)(1)(A) further requires the parties to provide:

> (iii) a computation of each category of damages claimed by the disclosing party--who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and

> (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.

A party's obligation to make available the supporting documents pertaining to the calculation of damages "applies only with respect to documents then reasonably available to it and not privileged or protected as work product."[42] In addition to initial disclosures, Rule 26(e) states:

> A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response:

> > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made

---

[41] *See* Mem. & Order at 28, ECF No. 162.

[42] Fed. R. Civ. P. 26(a)(1), advisory committee's note (1993).

known to the other parties during the discovery process or in writing; or

(B) as ordered by the court.

The Court reminds B&V to timely supplement is initial disclosures, particularly for a computation of damages, as required under Rule 26(e). B&V shall not withhold discoverable information that it may presently have in its possession, custody, or control even if such information maybe be cumulated and summarized in an expert report.[43] B&V's motion for protective order as it pertains to interim accounting documents is denied.

## IV.    Conclusion

B&V's request for a discovery conference or, in the alternative, appointment of an ESI master is denied at this time. B&V's motion for protective order as it pertains to production of ESI maintained in Documentum is denied in most respects. B&V, if it so chooses, need not search pre-July 2010 data with search terms already used in the July 2010 harvest. B&V's alternative request to shift some of the discovery costs onto the Defendants is denied. With regard to a clawback provision pertaining to ESI, the Court denies such a request at this time but encourages the parties to explore this option if necessary. B&V's request for protection as it relates to the production of B&V's custodian hard drives is denied. The parties shall meet and confer within fourteen (14) days of the date of this order regarding the proper method to search B&V's custodian hard drives. Finally, B&V's motion for protective order with regard to interim accounting information is denied. B&V is also reminded to timely supplement its initial disclosures and discovery responses as required under Rule 26(e).

Accordingly,

---

[43] *Bradley v. Val-Mejias*, No. 00-2395-GTV, 2001 WL 1249339, at *2 (D. Kan. Oct. 9, 2001) ("The fact that a plaintiff may later supplement his interrogatory response with an expert report does not permit him to initially refuse to respond with whatever discoverable information he presently holds.").

**IT IS THEREFORE ORDERED** that Plaintiff Black & Veatch's Motion for Protective Order and Request for Discovery Conference (ECF No. 131) is denied in most respects as outlined in this Memorandum and Order.

**IT IS FURTHER ORDERED** that the parties shall meet and confer within fourteen (14) days of the date of this order regarding the proper method to search B&V's custodian hard drives.

**IT IS SO ORDERED.**

Dated this 28th day of February, 2014, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
