# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BLACK & VEATCH CORPORATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 12-2350-SAC |
| | ) |
| ASPEN INSURANCE (UK) LTD, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendants Aspen Insurance (UK) Ltd., Catlin Lloyd's Syndicate 2003, Liberty Mutual Insurance Europe (UK) Ltd.'s (collectively, the "Liability Insurers") Motion to Compel Production of AON Risk Services Northeast, Inc. ("AON") Documents and For Other Relief (ECF No. 143). For the following reasons, the Court hereby grants the Liability Insurers' motion in most respects.

### I.  **Relevant Background**

The present dispute stems from a March 13, 2013 subpoena served by the Liability Insurers on AON, a third-party, requesting production of certain documents. On August 13, 2013, AON produced some of the requested documents, but not all. For the withheld documents, AON stated that it was instructed by Plaintiff Black & Veatch Corporation ("B&V") not to produce such documents on the basis of privilege and work-product protection. AON also informed the Liability Insurers that a privilege log would be provided by B&V for the withheld documents. B&V subsequently submitted a privilege log listing forty-one documents[1] claimed to be protected under the work-product doctrine, attorney-client privilege, and/or insurer-insured privilege. In the instant motion, the Liability Insurers move for an order overruling B&V's

---

[1] The parties state that forty-two items were listed on the privilege log. However, the privilege log submitted to the Court only contains forty-one documents.

objections and compelling production of all but two of the withheld documents. The two documents the Liability Insurers do not seek are letters authored by David Dekker, one of B&V's attorneys. In the alternative, the Liability Insurers request the withheld documents be submitted for an *in camera* review to determine the applicability of B&V's privilege objections.

This lawsuit originated out of a series of agreements B&V made with American Electric Power Service Corporation in its own capacity and/or as agent for other power companies (collectively, the "Owners"), to engineer, procure material and equipment for, and construct several wet flue gas desulfurization systems, also known as jet bubble reactors ("JBRs"), for four power plants. Prior to the construction of the JBRs, B&V procured commercial general liability coverage from several insurers with regard to the JBR projects. B&V argues that in 2007 Allied North America received a brokerage commission for co-brokering a commercial umbrella policy with the Liability Insurers.[2] B&V further asserts that Allied North America was acquired by AON in December 2009.[3] Neither Allied North America nor AON are parties to this litigation. B&V claims that it has maintained a long-term broker-client relationship with Allied North America and AON.[4] Further, B&V avers that AON was and remains a significant broker of B&V's insurance program and receives substantial commissions on an annual basis in connection with B&V's policies.[5] The Liability Insurers, however, argue that Allied North America was not the broker of the commercial umbrella policy. They assert that Jardine Lloyd Thompson, Ltd. brokered the policy, which is shown on the policy's Declarations page.[6] Further,

---

[2] B&V's Resp. to Mot. to Compel at 2, ECF No. 149.

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] The Liability Insurers' Reply. to Mot. to Compel at 4, ECF No. 151.

the Liability Insurers claim that Jardine Lloyd Thompson, Ltd. was and is the wholesale broker for B&V's general liability coverage in the United States.[7]

After construction of the JBRs, the Owners alleged significant defects to the JBR components. B&V entered into an agreement with the various Owners and paid them a lump-sum for repair costs and also agreed to replace defective components. The total amount incurred by B&V was several millions of dollars. To recover some of the incurred costs, B&V submitted a claim to its professional liability carriers and filed suit against MTI, a subcontractor who performed work on the JBRs. In 2009, B&V retained outside legal counsel and gave notice to the Liability Insurers of the losses it sustained. That same year, the Liability Insurers issued a reservation of rights letter to B&V. In 2012, B&V brought this breach of contract and declaratory judgment action against various insurance providers, including the Liability Insurers, seeking damages and an adjudication of rights, duties, and obligations under certain insurance policies.

B&V asserts that the withheld documents are protected from disclosure because AON was a representative of B&V when the documents were created. Further, B&V claims that the documents were prepared in anticipation of litigation, created after B&V retained outside counsel, and created after B&V received the 2009 reservation of rights letter. Before addressing the B&V's privilege objections, the Court must first examine whether the procedural conference requirement was met.

## II. Procedural Conference Requirement

Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2 require a moving party, in good faith, to confer with opposing counsel before filing a motion to resolve any discovery disputes. When a motion is filed, it "must include a certification that the movant has in good faith conferred or

---

[7] *Id.*

attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action."[8] The duty to confer generally requires counsel to "converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."[9] In this case, the Liability Insurers confirm that the parties have conferred in good faith, which included a "Local Rule 37.1 conference call," in an attempt to resolve their disputes about the withheld documents. After a review of the Liability Insurers' submissions, the Court finds the parties made several attempts to confer and compare views, and therefore, have satisfied the procedural conference requirement.

### III.  Discussion

Fed. R. Civ. P. 26(b)(1) provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." When a party fails to make disclosure of discovery, the opposing party may file a motion to compel. When a motion to compel is filed and asks the court to overrule certain objections, the objecting party must specifically show how each discovery request is objectionable.[10] Objections initially raised but not supported in the objecting party's response to a motion to compel are deemed abandoned.[11] Similarly, any objections not asserted in the initial response to a discovery request but raised in response to a motion to compel will be deemed waived.[12]

---

[8] Fed. R. Civ. P. 37(a)(1).

[9] D. Kan. Rule 37.2.

[10] *Sonnino v. Univ. of Kan. Hosp. Auth.*, 221 F.R.D. 661, 670-71 (D. Kan. 2004).

[11] *See Moses v. Halstead*, 236 F.R.D. 667, 675-679 (D. Kan. 2006) (finding work-product and attorney-client privilege objections to be abandoned because garnishee did not reassert these objections in response to a motion to compel); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 681 (D. Kan. 2004) (deeming privileges and confidentiality objections abandoned where not reasserted in opposition to a motion to compel); *Sonnino v. Univ. of Kan. Hosp. Auth.*, 220 F.R.D. 633, 642 (D. Kan. 2004) ("[W]hen an objection or privilege is initially raised but not relied upon in response to the motion to compel, the court will deem the objection or privilege abandoned.").

[12] *Cardenas v. Dorel Juvenile Grp., Inc.*, 230 F.R.D. 611, 621 (D. Kan. 2005).

In this case, B&V's response to the present motion only reasserts its work-product and attorney-client privilege objections, not its insurer-insured objection. Therefore, B&V's insurer-insured privilege objection is deemed abandoned. The Court will only address B&V's work-product and attorney-client privilege objections.

As the party asserting work-product protection and attorney-client privilege, B&V bears the burden of establishing that either or both apply.[13] To carry that burden, B&V must make a "clear showing" and "'describe in detail' the documents or information to be protected and provide 'precise reasons' for the objection to discovery."[14] The "Federal Rules of Civil Procedure require a fairly detailed and specific showing to withhold discovery on privilege grounds."[15] Fed. R. Civ. P. 26(b)(5) provides that when a party withholds documents or other information based upon a privilege or subject to protection as trial-preparation materials, the party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."

Further, B&V must "provide sufficient information to enable the Court to determine whether *each element* of the asserted objection is satisfied."[16] This burden can be met only by an evidentiary showing based on competent evidence and cannot be discharged by mere conclusory

---

[13] *Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir. 1984); *see McCoo v. Denny's Inc.*, 192 F.R.D. 675, 680 (D. Kan. 2000); *Johnson v. Gmeinder*, 191 F.R.D. 638, 642 (D. Kan. 2000).

[14] *McCoo*, 192 F.R.D. at 680 (citations omitted).

[15] *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 232 F.R.D. 669, 671 (D. Kan. 2005).

[16] *McCoo*, 192 F.R.D. at 680 (emphasis in original) (citing *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995)).

assertions or blanket claims of privilege.[17] Moreover, the objecting party has the burden to establish the existence of the privilege or immunity prior to the time a court is asked to determine its sufficiency and applicability.[18] A party's failure to meet the required showing when the trial court is asked to rule upon the existence of the privilege is not excused because the document is later shown to be one that would have been privileged if a timely showing had been made.[19] "'The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document.'"[20]

### A. Work-Product Doctrine

B&V objected to all forty-one documents listed on the privilege log based on work-product protection. The Liability Insurers seek to compel all but the two documents prepared by B&V's attorney, Mr. Dekker. In diversity cases, work-product protection is governed by the uniform federal standard outlined in Fed. R. Civ. P. 26(b)(3).[21] As the party asserting work-product protection, B&V has the burden to show "(1) the materials sought to be protected are documents or tangible things; (2) they were prepared in anticipation of litigation or for trial; and (3) they were prepared by or for a party or a representative of that party."[22] Here, the parties

---

[17] *See McCoo*, 192 F.R.D. at 683; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994) (citations omitted).

[18] *Rural Water Sys. Ins. Benefit Trust v. Grp. Ins. Adm'rs, Inc.*, 160 F.R.D. 605, 608 (D. Kan. 1995).

[19] *Am. Cas. Co. of Reading, Pa. v. Healthcare Indem., Inc.*, No. Civ. A. 00-2301-DJW, 2001 WL 1718275, at *2 (D. Kan. May 21, 2001) (citing *Peat, Marwick, Mitchell & Co.*, 748 F.2d at 542; *McCoo*, 192 F.R.D. at 680).

[20] *Sonnino*, 221 F.R.D. at 669 (quoting *Peat, Marwick, Mitchell & Co.*, 748 F.2d at 542).

[21] *Frontier Refining, Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (stating that "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3).").

[22] *Johnson*, 191 F.R.D. at 643 (citations omitted); *see* Fed. R. Civ. P. 26(b)(3) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).").

disagree as to whether the documents were prepared by a representative of B&V and in anticipation for litigation.

The Supreme Court in *Hickman v. Taylor* first recognized the work-product doctrine by finding that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel."[23] To that end, "[t]he work-product doctrine generally prevents the disclosure of the mental processes and thoughts of the attorney who is charged with planning and implementing a trial strategy."[24] "This privilege is justified based upon the attorney's solemn duty to promote justice and protect the client's interest."[25]

The work-product doctrine, however, is not restricted merely to materials prepared by attorneys themselves, but is also extended to an attorney's investigator or other agents. As explained by the Supreme Court in *United States v. Nobles*,

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.[26]

---

[23] 329 U.S. 495, 510 (1947).

[24] *Raytheon Aircraft Co. v. U.S. Army Corps of Eng'rs*, 183 F. Supp. 2d 1280, 1287 (D. Kan. 2001) (citing *Hickman*, 329 U.S. at 511; *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 n.16 (1975); *O'Shea v. Yellow Tech. Servs., Inc.*, No. Civ. A. 96-2370-GTV, 2000 WL 1456964, at *1 (D. Kan. Sept. 22, 2000)); *see Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) (stating that "the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions . . . "); *U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 247 F.R.D. 656, 657 (D. Kan. 2007) ("The work product doctrine, which is embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery documents, things and mental impressions of a party or his representative, particularly his attorney, developed for or in anticipation of litigation or trial.").

[25] *Raytheon Aircraft Co.*, 183 F. Supp. 2d at 1287 (citing *Hickman*, 329 U.S. at 511; *In re Foster*, 188 F.3d 1259, 1272 (10th Cir. 1999)).

[26] 422 U.S. 225, 238-39 (1975) (applying the work-product doctrine in criminal litigation).

"Although most often the work-product doctrine is applied to documents created by an attorney or under the supervision of an attorney, the plain language of Fed. R. Civ. P. 26(b)(3) does not require attorney supervision"[27] "Clearly, agents of a party or its representative, who stand in the legal shoes of the party, are entitled to the same work-product protections as the party itself."[28] As discussed in the 1970 advisory committee notes to Rule 26(b)(3),

> Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or *any representative acting on his behalf*. The rule then goes on to protect against disclosure the mental impressions, conclusions, opinions or legal theories concerning the litigation of an attorney or *other representative of a party*.[29]

A party's representative may include the party's attorney, consultant, surety, indemnitor, insurer, or agent.[30] An unsupported claim of agency relationship, however, is insufficient for a court to determine whether that party is a representative for work-product purposes.[31] The doctrine is not intended to protect work prepared in the ordinary course of business or investigative work unless it was done in preparation "for the real and imminent threat of litigation or trial."[32]

---

[27] *Pouncil v. Branch Law Firm*, No. 10-1314-JTM-DJW, 2011 WL 5025033, at *3 (D. Kan. Oct. 21, 2011); *Feldman v. Pioneer Petroleum, Inc.*, 87 F.R.D. 86, 88 (W.D. Okla. 1980) ("Such material need not be prepared by an attorney as Rule 26(b)(3) expressly extends protection to materials prepared by or for a representative of a party, including his agent.").

[28] *Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F. 3d 1179, 1184 (10th Cir. 2013) (citing *Nobles*, 422 U.S. at 238-39); *see Stewart v. Falley's Inc.*, No. 00-1124-WEB, 2001 WL 1318371, at *2 (D. Kan. Feb. 14, 2001) (stating that "[t]he 1970 amendments to Rule 26 expressly extended the work product protection to documents prepared for litigation by the adverse party itself or its agent.").

[29] Fed. R. Civ. P. 26(b)(3), advisory committee's note (1970) (emphasis added).

[30] Fed. R. Civ. P. 26(b)(3).

[31] *Heavin v. Owens-Corning Fiberglass*, No. 02-2572-KHV-DJW, 2004 WL 316072, at *4 (D. Kan. Feb. 3, 2004).

[32] *U.S. Fire Ins. Co.*, 247 F.R.D. at 657.

After a review of B&V's privilege log and the parties' submissions, AON's representative capacity as it pertains to the preparation or receipt of the withheld documents is unclear. B&V asserts that AON, acting as broker and a member of its advisory team, participated in strategy discussions with B&V and its legal counsel and undertook conservations, communications, and actions in furtherance of strategies with respect to insurance recoveries against the Liability Insurers. Henry Lombardi, the Executive Vice President and Chief Broking Officer of AON, also stated that during 2010-2012 he was at all times acting as a representative of B&V and in his own capacity as an AON employee.[33] Turning to the specific withheld documents, however, B&V fails to show that AON was acting beyond its scope as B&V's broker. The descriptions of the withheld documents lack information to show they were prepared by AON as B&V's representative able to stand in its legal shoes of for this litigation. For example, several of the withheld documents are simply described as communications or handwritten notes involving B&V's coverage claims. This lack of detail fails to show AON's representative capacity with regard to the withheld documents.

In addition, B&V only provides names, not job titles or other identifying information, for a majority of the individuals listed in the privilege log. B&V only identifies Mr. Lombardi and Kirk Woodward, a Senior Vice President for Risk Management at B&V.[34] The Court is left to speculate who the remaining individuals listed in the privilege are. These include: Thomas Krippene, Yola Brown, Michael Hector Kier, Andrew Laing, Robert Humphries, Ian Hacker, Paul Woodward, Annette Smith, Melinda Young, James Boone, Bob Humphries (if different from Robert Humphries), Stan Kordula, James MacNeal, and Julian Ehrlich. Further, the privilege log identifies several email addresses with domain names of businesses that are not

---

[33] Decl. of Henry Lombardi at 2, ECF No. 150-1.

[34] Decl. of Kirk Woodward at 1, ECF No. 149-1.

involved in this litigation or alleged to be B&V's representative (e.g. @lockton.com). B&V's failure to provide identifying information prevents the Court from evaluating whether these individuals, including those associated with the unknown email addresses, acted as representatives of B&V for this litigation, rather than in their capacity as employees for an insurance broker or other business entity.

Even if the individuals listed on the privilege log were B&V's representatives for the pending litigation, B&V fails to show that these documents were prepared in anticipation for litigation. When determining whether a document was prepared in anticipation for litigation, the objecting party must show there was real and substantial probability that litigation will occur at the time of the document's creation.[35] There are two components in determining whether documents are prepared "in anticipation of litigation."[36] The first is the causation requirement—the document in question must have been created because of the anticipation of litigation (i.e. to prepare for litigation or for trial).[37] The second component imposes a reasonableness limit on a party's anticipation of litigation—the threat of litigation must be "real" and "imminent."[38]

Courts also look "to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product. Materials assembled in the ordinary course of business or for other non-litigation purposes are not protected by the work-product doctrine."[39] Even if a party anticipates litigation, this does not make *all* documents thereafter generated

---

[35] *U.S. Fire Ins. Co.*, 247 F.R.D. at 657.

[36] *Marten v. Yellow Freight Sys., Inc.*, No. Civ. A. 96-2013-GTV, 1998 WL 13244, at *10 (D. Kan. Jan. 6, 1998).

[37] *Id.*

[38] *Id.*

[39] *Id.* (citations omitted).

automatically protected.[40] A party must still demonstrate the document was prepared principally or exclusively in anticipation of ongoing litigation and establish the underlying nexus between the preparation of the document and the specific litigation.[41] "To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation."[42]

  B&V fails to show that the documents in question were created in anticipation of litigation rather than in AON's ordinary course of business as a broker. As previously stated, several of the documents are simply described as either notes or other communications relating to B&V's coverage claims. Based upon these descriptions, there is no way to determine whether the documents pertain to this litigation or are routine communications by a broker because they could fall into either category. Additionally, seventeen of the withheld documents are Mr. Lombardi's handwritten notes. The privilege log indicates that these handwritten notes were not provided to any other individual. If these documents were prepared by a representative of B&V for the anticipation of litigation or trial, it is unclear why such documents never were passed along to B&V or its attorneys. While this may not preclude a document from ever receiving protection, it further demonstrates the documents were unlikely prepared for this litigation. Moreover, B&V does not provide the dates of creation for eleven of Mr. Lombardi's handwritten notes. The lack of any dates prevents the Court from determining if the documents were created after litigation commenced or at a time when litigation was reasonably anticipated, a requirement for work-product protection.

---

[40] *Marten*, 1998 WL 13244 at *11.

[41] *Id.* at *11.

[42] *Id.* at *10.

B&V tries to argue that the withheld documents were prepared in anticipation of this litigation because they were created after the Liability Insurers sent B&V a reservation of rights letter and after B&V hired outside counsel. First, several of the documents lack dates to show they were created after these two events. Second, this District has rejected a bright line rule that ordinary course of business ends and anticipation of litigation begins as soon as the insurer decides to decline coverage.[43] Whether documents are prepared in anticipation of litigation ultimately requires "a case-by-case analysis, considering the unique factual context of the given problem."[44] In an insurance investigation setting, "whether insurer and adjuster documents were created in anticipation of litigation depends on whether the party seeking protection can point to a definite shift made by the insurer or adjuster from acting in its ordinary course of business to acting in anticipation of litigation."[45] The same principle holds true here. B&V does not point to a definitive shift from AON acting as a broker to AON acting as B&V's representative for this litigation. Third, the fact that a document may have been prepared after B&V hired outside counsel does not conclusively show that the documents were prepared in anticipation for litigation. "Merely retaining counsel does not make documents thereafter prepared protectable under the work product doctrine."[46]

The Court is also mindful that B&V has made several claims arising from the JBR projects. For instance, B&V made a claim with its professional liability carriers and also a claim with Zurich Insurance Company under a general liability policy. These claims are not a part of the current litigation. However, B&V does not address this distinction for several of the

---

[43] *U.S. Fire Ins. Co.*, 247 F.R.D. at 659.

[44] *Id.* (citing *St. Paul Reinsurance Co. v. Commercial Fin. Corp.*, 197 F.R.D. 620, 632 (N.D. Iowa 2000)).

[45] *Id.* (citing *Westhemeco Ltd. v. N. H. Ins. Co.*, 82 F.R.D. 702, 708-709 (S.D.N.Y. 1979)).

[46] *Quality Time, Inc. v. W. Bend Mut. Ins. Co.*, No. 12-1008-JTM-GLR, 2012 WL 5499555, at *7 (D. Kan. Nov. 13, 2012) (citing *Disidore v. Mail Contractors of Am., Inc.*, 196 F.R.D. 410, 414 (D. Kan. 2000)).

documents listed in its privilege log. For example, B&V's seeks protection for an October 2010 email (Bates Nos. AON-PRIV000060- AON-PRIV000062) sent from Melinda Young to Thomas Krippene, with Annette Smith and James Boone carbon copied on it. B&V describes this email as "[c]ommunication related to B&V's coverage claims and policy language." The involvement of these individuals with B&V's other policies is unknown to the court. However, B&V fails to demonstrate that the "claims" it describes are those at issue in this specific litigation.

Finally, one of the withheld documents (Bates Nos. AON-PRIV000017- AON-PRIV000020) is handwritten notes by B&V's employee, Kirk Woodward, prepared on January 26, 2011. The privilege log shows the notes were not provided to any other individual and are described as "[h]andwritten notes made on letter from Aspen's counsel to B&V's counsel regarding Aspen's position on B&V's coverage claims." Even though Mr. Woodward likely is a representative of B&V, nothing suggests his handwritten notes were prepared for the real and imminent threat of this litigation.

In conclusion, B&V fails to show that AON created the withheld documents as B&V's representative for this litigation, not as a broker of certain insurance policies. B&V also fails to show that the withheld documents were prepared in anticipation of litigation. For these reasons, B&V's work-product objection is overruled.

### B. Attorney-Client Privilege

Rule 501 of the Federal Rules of Evidence dictates how privileges are determined.[47] Pursuant to Rule 501, state law governs the applicability and scope of attorney-client privilege in diversity actions.[48] The parties apply Kansas law in this matter; but, because "no real conflict

---

[47] *ERA Franchise Sys., Inc. v. N. Ins. Co. of N. Y.*, 183 F.R.D. 276, 278 (D. Kan. 1998).

[48] Fed. R. Evid. 501. "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law

between federal and Kansas law regarding the attorney-client privilege [exists,] . . . whether the Court applies federal or Kansas law generally makes no difference in determining whether attorney-client privilege applies."[49]

"The privilege protecting confidential communications between attorney and client is the oldest of the common-law privileges and has for its purpose the fostering of full and frank communication between lawyers and their clients."[50] The attorney-client privilege "should be strictly confined within the narrowest possible limits."[51] "The reason the privilege is so restricted is that it deprives the factfinder from otherwise relevant information."[52] In Kansas, the attorney-client privilege is codified in K.S.A. § 60–426. The Kansas Supreme Court has summarized the elements as follows:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.[53]

---

supplies the rule of decision." *Id. See Sprague v. Thorn Ams., Inc.*, 129 F.3d 1355, 1368-69 (10th Cir. 1997) (discussing the application to state law versus federal law to the issue of attorney-client and work-product privileges); *see also ERA Franchise Sys., Inc.*, 183 F.R.D. at 278.

[49] *Kan. Wastewater, Inc. v. Alliant Techsystems, Inc.*, 217 F.R.D. 525, 526 at n.3 (D. Kan. 2003) (internal citations omitted).

[50] *State ex rel. Stovall v. Meneley*, 22 P.3d 124, 140 (Kan. 2001) (citations omitted); *Marten v. Yellow Freight Sys., Inc.*, No. Civ. A. 96-2013-GTV, 1998 WL 13244, at *6 (D. Kan. Jan. 6, 1998) ("The privilege 'protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor.'" (citations omitted)).

[51] *State ex rel. Stovall*, 22 P.3d at 140 (citations omitted).

[52] *Id.* (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)).

[53] *Cypress Media, Inc. v. City of Overland Park*, 997 P.2d 681, 689 (Kan. 2000) (quoting *State v. Maxwell*, 691 P.2d 1316, 1319 (Kan. Ct. App. 1984)). The Court notes that these are the same elements under federal law. *See Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 WL 1207232, at *4 (D. Kan. Apr. 11, 2012).

"'Communication' includes advice given by the attorney in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the attorney incidental to the professional relationship."[54]

B&V objects to producing five of the withheld documents on attorney-client privilege grounds, three of which are being sought by the Liability Insurers in the instant motion. However, the Liability Insurers argue that these three documents do not involve an attorney, and therefore, cannot be protected under the attorney-client privilege. In most instances the involvement of an attorney is required. The lack of attorney involvement, however, does not necessarily preclude a party from demonstrating the privilege's applicability.[55] As thoroughly explained in *Williams v. Sprint/United Management Co.*, Magistrate Judge David J. Waxse sets forth the rare occasion that attorney-client protection may be established without direct attorney communication.[56] As Judge Waxse explains,

> Organizational clients and business entities often are personified by a number of employees. In preparation for, or in the midst of, consultations with an attorney, employees of the client will often consult one another to ensure that the attorney's advice is based on full knowledge of all relevant facts. With regard to the attorney-client privilege, the United States Supreme Court specifically acknowledges that "sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The Court goes on to say that "[t]he lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." *Id.*
>
> For all of these reasons, the Court finds that although written communication between corporate management employees is not necessarily protected by the attorney-client privilege, a party may

---

[54] K.S.A. § 60-426(c)(2).

[55] *Williams v. Sprint/United Mgmt. Co.*, No. 03-2200-JWL-DJW, 2006 WL 266599, at *3 (D. Kan. Feb. 1, 2006).

[56] *Id.*

be able to successfully demonstrate applicability of privilege by establishing that the communication was made in confidence for the primary purpose of obtaining legal advice. In order to do so, however, the party asserting the privilege must be able to establish the other elements of the privilege. For example, no privilege will attach for documents designed merely to communicate non-privileged business data or for documents where the element of confidentiality is lacking.[57]

Even though communications between two non-attorneys potentially can receive protection, B&V fails to provide sufficient information for the Court to determine whether each element of attorney-client privilege is satisfied. At the outset, B&V fails to show that the documents were made in confidence for the primary purpose of obtaining legal advice from a professional legal advisor. These three documents were prepared by and/or sent to Mr. Woodward, Mr. Lombardi, and/or Mr. Krippene—none of which are identified as a professional legal advisor. The document descriptions provided by B&V also do not show that their primary purpose was to seek or receive legal advice. Moreover, the documents are not "communications," as defined under Kansas statute for attorney-client privilege, because B&V fails to show the documents include advice by B&V's attorney or were disclosures made by B&V to its attorney or representative. In fact, B&V fails to show that any legal advice was given with regard to these documents. For example, one of these three withheld documents (Bates No. AON-PRIV000041) includes handwritten notes by Mr. Lombardi purportedly related to a meeting with B&V's counsel regarding its coverage claims. B&V fails to show how these

---

[57] *Id.* (adopting the view held in *Eutectic Corp. v. Metco Inc.*, 61 F.R.D. 35 (E.D.N.Y. 1973), which found documents to be protected under the attorney-client privilege because defendants showed that the documents contained confidential information gathered for the dominant purpose of facilitating the attorney's efforts to provide services to the client) (citing *Lintz v. Am. Gen. Fin., Inc.*, No. Civ. A. 98-2213-JWL, 1999 WL 450197, at *4 (D. Kan. June 24, 1999); *United States v. Chevrontexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002); *In re Grand Jury Proceedings*, M-11-189, 2001 WL 1167497, at *24 (S.D.N.Y. Oct. 3, 2001); *Penn Valley Pump Co. v. Alfa Laval Pumps, Inc.*, No. 97-5194, 1999 WL 1293348 (E.D. Pa. Dec. 30, 1999); *First Chicago Int'l v. United Exchange Co.*, 125 F.R.D. 55, 58 (S.D.N.Y. 1989); *Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198, 203 (E.D.N.Y. 1988); *United States v. Am. Tel. & Tel. Co.*, 86 F.R.D. 603, 619 (D.D.C. 1979); *Burlington Indus. v. Exxon Corp.*, 65 F.R.D. 26, 39 (D. Md. 1974); *Eutectic*, 61 F.R.D. at 40; *Danisch v. Guardian Life Insur. Co. of Am.*, 18 F.R.D. 77, 80 (S.D.N.Y. 1955)).

handwritten notes were used to seek legal advice, are communications made in confidence, and/or that AON was even a representative of B&V for the purposes of this litigation. For these reasons, B&V's attorney-client privilege objections are overruled.

C. *In Camera* **Review**

The Liability Insurers' motion alternatively requests an *in camera* review of the withheld documents. "The decision whether to review [documents] *in camera* is within the sound discretion of the trial court."[58] "The court may and does review documents *in camera* to determine an alleged privilege, when the party asserting it has made some initial, factual showing that it exists. The Court must have some bases or grounds for conducting an *in camera* review."[59]

> Such review may be useful if there is a genuine dispute between the parties as to the accuracy of the withholding party's description of certain documents. Such review is not, however, to be routinely undertaken, particularly in a case involving a substantial volume of documents, as a substitute for a party's submission of an adequate record in support of its privilege claims.[60]

As described above, B&V fails to support its privilege objections. Further, there is no dispute between the parties as to the accuracy of the B&V's document descriptions. Therefore, there are no grounds in which to conduct an *in camera* review. The Court, in its discretion, denies Liability Insurers' alternative request for an *in camera* review.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendants Aspen Insurance (UK) Ltd., Catlin Lloyd's Syndicate 2003, Liberty Mutual Insurance Europe (UK) Ltd.'s Motion to Compel Production of AON Risk Services Northeast, Inc. Documents and For Other Relief (ECF No.

---

[58] *Mounger v. Goodyear Tire & Rubber Co.*, No. 99-2230-JWL, 2000 WL 33712198, at *1 (D. Kan. Sept. 22, 2000) (quoting *In re Grand Jury Subpoenas*, 906 F.2d 1485, 1493 (10th Cir. 1990)).

[59] *Id.* (citations and internal quotation marks omitted).

[60] *Id.* (quoting *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. 1993)).

143) is hereby granted in most respects. AON shall produce all withheld documents, other than the documents created by attorney David Dekker (Bates Nos. AON-PRIV000064-71, AON-PRIV000072-79), within fourteen (14) days of this order. Defendants' request for an *in camera* review is denied.

**IT IS SO ORDERED.**

Dated this 28th day of February, 2014, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge
