## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| BLACK & VEATCH CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-2350-SAC |
| | ) | |
| ASPEN INSURANCE (UK) LTD, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM & ORDER</u>

This matter comes before the court upon the defendants' Motion for Sanctions (ECF No. 252). The movants, Aspen Insurance (UK) LTD. and Lloyd's Syndicate 2003 ("liability insurers"), are the sole defendants left in this action. Their motion requests the court to: (1) deduct $44 million from B&V's $63 million damages claim;[1] (2) deem admitted their Second Requests to Admit; (3) compel B&V to produce a copy of its final settlement agreement with Zurich; or alternatively, they seek a court order that would (a) preclude B&V from asserting a privilege objection to the production of financial documents; (b) require B&V to produce documents responsive to the liability insurers' requests for production of documents; and (d) extend the scheduling order.[2] For the following reasons, the court grants in part and denies in part the liability insurers' motion.

### I.    Background

The court has set out the background of this case in several previous orders.[3] In brief, B&V entered into a series of agreements to construct several wet flue gas desulfurization

---

[1] Mem. in Supp. of Mot. Evidentiary Sanctions at 13, ECF No. 253.

[2] Mot. for Evidentiary Sanctions at 1, ECF No. 252.

[3] *See e.g.*, Mem. & Order at 1–3, ECF No. 162.

systems, also known as jet bubble reactors ("JBRs").  After construction of the JBRs, the owners alleged significant defects to the JBR components.  B&V agreed to pay the owners a lump-sum for repair costs and to replace defective components.  The total amount incurred by B&V was several millions of dollars. To recover some of the incurred costs, B&V submitted claims to its various liability and property insurers.  B&V has settled a number of those claims, including its claim against its primary general liability insurer, Zurich.  B&V explains that when Zurich realized that B&V's claims would exceed the available limits on its policy, it agreed to pay B&V 75% of all costs up to the available coverage limits.[4]  In this action, B&V seeks to recover the remainder of its costs from defendants, which provided policies for excess liability coverage. Specifically, B&V brought this breach-of-contract and declaratory judgment action against the liability insurers seeking damages and an adjudication of rights, duties, and obligations under certain insurance policies.

The current dispute centers on B&V's damages claim and whether B&V has produced sufficient documentation of its claim.  B&V claims its production is sufficient.  It claims that Zurich's reimbursements "were not made on an invoice by invoice basis, but rather pursuant to an agreed process whereby a percentage of all rebuild costs submitted were paid."[5]  Instead of disclosing every invoice, payroll log, receipt and document underlying its claim, B&V produced and relies on an expert report, the Benes Report, to prove damages.  It explains that, due to the number of invoices involved, Mr. Benes, the damages expert, calculated damages on a "sample basis."  He did not review every invoice or timesheet, instead he inspected a sampling of the underlying documents to ensure that they were accurately reported.  B&V asserts that it has

---

[4] Pl.'s Mem. in Opp'n to Liability Insurers' Mot. for Evidentiary Sanctions at 3, ECF No. 264.

[5] Pl.'s Mem. in Opp'n to Liability Insurers' Mot. for Evidentiary Sanctions at 3, ECF No. 264.

provided the liability insurers with "ample opportunity to examine and analyze"[6] its damages computations and that it has "invited follow-up inspection in the event additional information was required."[7]

Whether B&V should be required to produce additional documentation supporting its damages claim has been an issue in this litigation for over a year and has largely been addressed in previous orders.  However, the court will address the issue to the extent the liability insurers allege that B&V violated specific court orders and seeks to have the court determine whether B&V's responses are sufficient with regard to specific discovery requests.[8]  The liability insurers assert that B&V has failed to comply with Fed. R. Civ. P. 26, the scheduling order, and the court's February 28, 2014 memorandum and orders.  They also challenge B&V's responses and production associated with their Second Requests to Admit[9] and Third Production Requests.[10]

## II.    Discussion

The liability insurers bring this motion under Fed. R. Civ. P. 37.  However, the motion is not formulated as a motion to compel under Fed. R. Civ. P. 37(a), which would require the liability insurers to attach "copies of the notices of depositions, the portions of the interrogatories, requests, or responses in dispute."[11]  The liability insurers attach as exhibits the requests for production and requests to admit that are at issue, but they do not explain which

---

[6] *Id.* at 4.

[7] *Id.* at 8–9.

[8] Mem. & Order, ECF No. 163.

[9] Mem. in Supp. of Mot. For Evidentiary Sanctions, ECF No. 253-1 Exhibit A.

[10] *Id.* at ECF No. 253-2 Exhibit B.

[11] D. Kan. R. 37.1(a).

responses, if any, they seek to compel.  On the contrary, they state that "Given that discovery is nearly complete, compelling the production of these documents does not remedy the harm."[12]

Rather, the liability insurers seem to bring this motion under Fed. R. Civ. P. 37(b), which allows a party to seek sanctions for another party's failure to obey a court order to permit discovery.  They assert that "At this late date in the discovery of this case, the only solution is to credit or reduce the $44 million reimbursement from B&V's claim."[13]

### a.  The court's prior orders and Rule 26

The first matter before the court is whether B&V has violated either Fed. R. Civ. P. 26 or a previous court order—whether its disclosure of the Benes Report on Damages along with the information Mr. Benes relied on in generating his report was sufficient, or whether it was required to turn over every invoice; receipt; wage report; proof of reimbursement; and any other document upon which B&V bases its claim for damages.  As explained below, the court finds that B&V's disclosures complied with the requirements of Rule 26, but this does not absolve B&V from the requirement of complying with other discovery requests or the court's subsequent orders.  The liability insurers are still entitled to test B&V's calculation of damages to the extent that the production they seek was previously ordered or was validly requested under Rule 34. As explained below, the court finds that the liability insurers are entitled to all documentation that relates to the expenses B&V incurred as a result of the rebuilds and all documentation of any reimbursements it received from third parties.

---

[12] Mem. in Supp. of Mot. For Evidentiary Sanctions at 2, ECF No. 253.

[13] *Id.* at 19.

First, the liability insurers seek sanctions for B&V's alleged failure to comply with Fed. R. Civ. P. 26(a).[14]  This argument is related to defendants' argument that B&V violated previous court orders[15] and the scheduling order,[16] because those orders all discussed Rule 26 and required compliance with the rule.

Fed. R. Civ. P. 26(a)(1)(A)(ii) requires "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."  The rule also requires parties to timely supplement these disclosures.[17]  "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."[18]

On February 28, 2014, the court entered three orders, two of which are relevant to this matter.  In both, the court discussed Rule 26 and explained that the scheduling order restates the plain language of the Rule.[19]  The court reminded each party to comply with the Rule by producing anything it might use to support its case.  The court ordered B&V to supplement its

---

[14] Mem. in Supp. of Mot. For Evidentiary Sanctions at 8–12, ECF No. 253.

[15] Mem. & Order at 19–20, ECF No. 163.

[16] Scheduling Order, ECF No. 57.

[17] Fed. R. Civ. P. 26(e)(1).

[18] Fed. R. Civ. P. 26(c)(1).

[19] *See* Mem. & Order at 5–6, ECF No. 162; Mem. & Order at 19–20, ECF No. 163.

initial disclosures "to include a specific computation of each category of claimed damages" and to make available for inspection and copying the documents supporting the computation.[20]

The liability insurers claim that B&V's production of the Benes Report on Damages, which was generated using only a sampling of the underlying documentation of B&V's claim, was insufficient under Rule 26, the scheduling order, and the court's February 28, 2014 orders. They believe that B&V should have produced all documentation underlying B&V's claim, not just a sampling or summary. They claim that recent depositions and discovery responses have, for the first time, put them on notice that B&V produced documents supporting its damages claim on a "sample basis."[21]

B&V responds that "The documents relied on by Benes to test the data have all been produced, and the explanation of the testing and the sampling method used by Benes is set out in detail in the Benes Report on Damages, issued September 3, 2013."[22] B&V also states that it has continually offered to make additional documents available for inspection, but that the liability insurers only recently requested to view additional documentation.[23] It appears that B&V intends to use the Benes Report to support its claim of damages, not the underlying documentation, and it certifies that it has produced all of the information Mr. Benes relied upon in generating that report.

When deciding whether production under Rule 26 is sufficient, the court considers the underlying objectives of the rule. It was "designed to accelerate the exchange of basic

---

[20] *Id.* at 9.

[21] Mem. in Supp. of Mot. For Evidentiary Sanctions, ECF No. 253.

[22] Pl.'s Mem. in Opp'n to Liability Insurers' Mot. for Evidentiary Sanctions at 6, ECF No. 264.

[23] Pl.'s Mem. in Opp'n to Liability Insurers' Mot. for Evidentiary Sanctions at 9, ECF No. 264.

information, help focus the discovery that is needed, facilitate preparation for trial or settlement, and eliminate surprise."[24]  The general purpose of discovery "is to avoid one side ambushing the other and the litigants should not indulge in gamesmanship with respect to their disclosure obligations."[25]  Under Fed. R. Civ. P. 37(c) a party that fails to comply with its disclosure requirements is precluded from using previously undisclosed information unless its failure was "substantially justified or is harmless."  This prohibition was "designed to prevent the sandbagging of an opposing party with new evidence and prevent gamesmanship."[26]  However, it is also a drastic remedy that "will apply only in situations of bad faith and callous disregard of the rules."[27]

The liability insurers request that the court prohibit B&V from supporting its damages claim using any of the information in its database that it has not yet produced.[28]  It is not apparent to the court that B&V wishes to use any documentation it has not yet produced to support its claim.  But even if B&V's disclosures were insufficient, or were not timely supplemented, the court does not find it necessary to prevent B&V from using specific documents at this time.  B&V has not yet sought and may never seek to use the documentation in question, and preemptively prohibiting it to use such documentation at a later date is premature.

The liability insurers cannot claim surprise because B&V's disclosures apprise defendants of the total amount of its claim and disclose the method by which B&V intends to

---

[24] *Digital Ally, Inc. v. Z3 Tech., LLC*, No. 09-2292-KGS, 2012 WL 2402771, at *2 (D. Kan. June 26, 2012).

[25] *Id.*

[26] *Id.* at *3.

[27] *Id.*

[28] Mot. for Evidentiary Sanctions, ECF No. 252.

prove its damages.  B&V's reluctance to produce the universe of its damages documentation at the initial disclosure stage does not seem to constitute bad faith or flagrant disregard for the rules and it does not prejudice the liability insurers, who appropriately sought the underlying documentation with a request for production of documents.  To the extent that the liability insurers' motion seeks relief for B&V's failure to comply with Rule 26 or the court's orders requiring compliance with the Rule, it is denied.

In support of their claim that B&V violated prior court orders, the liability insurers also specifically rely on the portion of the court's February 28, 2014 memorandum and order denying B&V's motion for a protective order.[29]  This order dealt mainly with the parties disagreements about the scope of discovery regarding electronically stored information.  Defendants apparently rely on the portion denying B&V's request for protection from producing electronic interim accounting reports regarding the costs of the JBR projects.  In its motion for protective order, B&V described these documents as "everything related to any cost incurred (down to separate invoices for each cost submitted by any supplier or subcontractor and daily recorded time for each time keeper)."[30]  Because B&V failed to show good cause for the court to enter a protective order on the basis of undue burden, the court denied the request on that ground.[31]  Therefore the "interim accounting reports" should have been produced.

To the extent that the liability insurer's motion seeks to compel B&V to produce documentation of all costs incurred in the rebuild project it is granted.  By B&V's own

---

[29] Mem. & Order at 17–20, ECF No. 163.

[30] Mem. in Supp. of Mot. for Protective Order and Request for Discovery Conference at 11, ECF No. 132 (internal quotations omitted).

[31] Mem. & Order at 19–20, ECF No. 163.

description, the production defendants sought at that time included "everything related to any cost incurred."  B&V must produce this documentation on or before **August 21, 2015**.

### b.  Requests for admission

Next, the liability insurers request a court order deeming admitted their Second Request to Admit.[32]   Fed. R. Civ. P. 36(a) sets out the scope and procedure for requests to admit.  It allows a party to "serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to: (A) facts, the application of law to fact, or opinions about either; and (B) the genuineness of any described documents."

Requests are designed to reduce trial time by "facilitat[ing] proof with respect to issues that cannot be eliminated from the case, and secondly, to narrow the issues by eliminating those that can be."[33]   "Generally, the purpose is not to discover additional information concerning the subject of the request, but to force the opposing party to formally admit the truth of certain facts, thus allowing the requesting party to avoid potential problems of proof."[34]   "Requests for admissions are designed to eliminate issues from a case prior to trial and to avoid unnecessary evidence with respect to issues that are not truly in contention and can be fully developed by admissions of the parties."[35]

---

[32] Mot. for Evidentiary Sanctions, ECF No. 252.

[33] *Bowers v. Mortg. Elec. Registration Sys.*, No. 10-4141-JTM-DJW, 2012 WL 2798801, at *2 (D. Kan. July 9, 2012).

[34] *Id.* at *2 (citing *Solis v. La Familia Corp.*, No. 10-2400-EFM-GLR, 2012 WL 1906508, at *2 (D. Kan. May 25, 2012) (citing *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625744, at *2 (D. Kan. Oct. 5, 1995) (citing *Hurt v. Coyne Cylinder Co.*, 124 F.R.D. 614, 615 (W.D. Tenn. 1989) (internal quotations omitted).

[35] *Hurt v. Coyne Cylinder Co.*, 124 F.R.D. 614, 615 (W.D. Tenn. 1989).

Fed. R. Civ. P. 36(a)(6) provides that a "requesting party may move to determine the sufficiency of an answer or objection."  In responding to a request for admission, a party "must make a good faith effort to obtain information"[36] "to ascertain the truth if the ability to do so is reasonably within his power."[37]  The rule "further requires the answering party to specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter, and requires a detailed explanation for the inability of the respondent to admit or deny a request."[38]  The Honorable Gerald L. Rushfelt, United States Magistrate Judge, has relied on the following guidelines to explain the circumstances under which requests for admission are appropriate:

> Requests are not appropriate for argument. They should not put forward the requester's legal or factual contentions on the premise that, in the requester's view, they ought to be admitted. Requests for admissions should be made only if the requesting party has a reasonable expectation that the opponent should in good faith admit them. With respect to claims and defenses, a request is appropriate when it appears from what the opponent has indicated or from other circumstances that the issue may thereby be narrowed or focused. With respect to factual matters, a request is appropriate when the evidence at hand indicates that the matter is not reasonably disputable and that proof at trial may thereby be limited or facilitated. Requests directed at such matters may help delineate the scope of necessary discovery. They should not be used, however, to address evidentiary minutiae or matters of no apparent materiality.[39]

B&V's response to the requests for admission begins with a section titled "General Objections" that are intended to apply to the requests as a whole.  This section

---

[36] *Audiotext Commc'ns Network, Inc. v. US Telecom, Inc.*, No. 94-2395-GTV, 1995 WL 625744, at *2 (D. Kan. Oct. 5, 1995) (citing *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, No. 88-9752, 1992 WL 394425, at *2 (E.D. Penn. Dec. 28, 1992)).

[37] *Id.* (citing *Johnson Intern. co. v. Jackson Nat. Life Ins. Co.*, 812 F. Supp. 966, 987 (D. Neb. 1993) (internal quotations omitted).

[38] *Id.* (citing *Hay v. Forage Indus. v. Ford New Holland, Inc.*, 132 F. R. D. 687, 694 (D. Kan. 1990)) (internal quotations omitted).

[39] *Id.* (citing WILLIAM W. SCHWARZER ET AL., CIVIL DISCOVERY AND MANDATORY DISCLOSURE: A GUIDE TO EFFICIENT PRACTICE, 5-4 to 5-5 (2d ed. 1994)).

expresses B&V's objections to the requests using language such as "to the extent that" and "insofar as."   "In the District of Kansas, general objections are considered overly broad and worthless unless the objections are substantiated with detailed explanations. Our courts disapprove of the practice of asserting a general objection 'to the extent' it may apply to particular requests for discovery."[40]   B&V, as the party resisting discovery, has the burden of supporting all of its objections, including its general objections.   B&V's section of general objections is meaningless and hypothetical because none of the objections are substantiated with respect to specific requests for admission.   Therefore the court need only address the sufficiency of B&V's responses to each individual request.

The liability insurers' requests for admission include 99 separate requests seeking to discover whether B&V seeks payment for specific invoices in this litigation, whether specific invoices were already paid, or whether all invoices from specific sources were paid by Zurich.[41]   B&V admitted or denied each request, including where appropriate, a detailed explanation of why B&V could not truthfully admit the request.   For example, Request No. 11 requests B&V to "Admit that invoice no. BV-100726 from FEMech Engineering in the amount of $27,311.20 has been reimbursed from the Professional Liability Insurers to Black and Veatch."[42]   B&V responded:

> Denied.  Only a portion of the invoice was submitted to the Professional Liability Insurers and based upon the payment records provided by the Professional Liability Insurers, we are unable to determine if this specific invoice was paid

---

[40] *Gassaway v. Jarden Corp.*, 292 F.R.D. 676, 680 (D. Kan. 2013) (citing *Terracon consultants Inc. v. Drash*, No. 12-2345, 2013 WL 1633572, at *1 (D. Kan. Apr. 16, 2013)) (internal quotations omitted).

[41] Mem. in Supp. of Mot. For Evidentiary Sanctions, ECF No. 253-12 Exhibit L, Black & Veatch Corp.'s Resps. to Liability Insurers Defs.' Second Requests to Admit.

[42] Mem. in Supp. of Mot. For Evidentiary Sanctions, ECF No. 253-12 Exhibit L, B&V Corp.'s Resps. to Liability Insurer Defs.' Second Reqs. to Admit at 3.

(reimbursed) partially, fully, or not paid at all.  The Professional Liability Insurers only paid $59,508,632 out of the $100,310,549 that was submitted to the Professional Liability Insurers by Black & Veatch.  The difference totaling $40,801,917 was not paid to Black & Veatch.

The liability insurers bring this motion because they disagree with the substance of B&V's answers, but the purpose of a request for admission is not to argue about disputed issues, or discover further information.  Instead requests for admission are appropriate for narrowing undisputed issues for trial.  Because B&V answers, either admits or denies the requests, and explains the majority of its responses, the court does not find its responses insufficient, and will not deem the requests admitted.  The liability insurers' substantive disagreement with B&V's responses provides further evidence that the issues raised could not appropriately be disposed of in requests for admission.  The parties' dispute about whether B&V was reimbursed by Zurich on an invoice-by-invoice basis is a factual issue to be decided on summary judgment or at trial.  To the extent the liability insurers' motion seeks its Second Requests to Admit to be deemed admitted, it is denied.

### c.   The Zurich settlement agreement

The liability insurers originally sought to compel B&V to produce a copy of the final settlement agreement between B&V and Zurich.  They now inform the court that this issue is resolved.[43]  B&V has produced the Zurich Settlement Agreement.[44]  Therefore, to the extent the liability insurers' motion sought to compel production of the agreement, it is denied as moot.

### d.   Requests for production of documents

The liability insurers challenge the sufficiency of B&V's responses to their third request for production of documents.  Fed. R. Civ. P. 34 governs the scope and procedure for requesting

---

[43] Reply in Further Supp. of Their Mot. for Evidentiary Sanctions at n.1, ECF No. 267.

[44] Pl.'s Mem. in Opp'n to Liability Insurers' Mot. for Evidentiary Sanctions at 1, ECF No. 264.

the production of documents.  It provides that "a party may serve on any other party a request

within the scope of Rule 26(b): (1) to produce . . . any designated documents or electronically

stored information—including writings, drawings, graphs, charts, photographs, sound recordings,

images, and other data or data compilations—stored in any medium from which information can

be obtained either directly or, if necessary, after translation by the responding party into a

reasonably usable form."  The rule requires documents to be produced "as they are kept in the

usual course of business" or they must be organized and labeled to correspond to the categories

in the request.[45]

B&V again begins its responses to the discovery requests with a section of general

objections.  As discussed above, these general objections are not helpful to the court unless they

are substantiated with respect to each specific request.  B&V's general objections section uses

language such as: "B&V objects to these Requests insofar as . . ."[46] and "to the extent that . . . ."

Because these objections are not substantiated, they are deemed abandoned.

In B&V's responses to the individual requests, it only asserts specific objections to

numbers 6, 7, and 8.  Request No. 6 seeks:

> All documents reflecting payment of any invoices responsive to Requests No. 1
> and 2, above, including but not limited to wire transfer instructions, canceled
> checks, ledger entries, account entries, proofs of payment, transmittal or
> explanatory letters or any other form of documentation reflecting the fact and
> amount of payment You have received on any of the invoices responsive to
> Requests No. 1 and 2, above.

Request Nos. 1 and 2, referenced in Request No. 6, request all invoices supporting B&V's

damages claim, and all invoices which were submitted to the professional liability insurer for

---

[45] Fed. R. Civ. P. 34(b)(1)(E)(i).

[46] Mem. in Supp. of Mot. For Evidentiary Sanctions, ECF No. 253-13 Exhibit M, B&V Corp.'s Resps. to Liability
Insurer Defs.' Third Produc. Reqs at 1–4.

reimbursement.  B&V asserts an objection to Request No. 6. "on the grounds that it is vague and ambiguous, as it is not clear whether the request seeks records related to B&V's payment of the initial invoices or whether it seeks records related to reimbursements B&V received from third parties."

"The party objecting to discovery as vague or ambiguous has the burden to show such vagueness or ambiguity.  A party responding to discovery requests should exercise reason and common sense to attribute ordinary definitions to terms and phrases utilized in" discovery.[47]  B&V has not met its burden to show Request No. 6 is vague or ambiguous.  The liability insurers are requesting the production of every invoice upon which B&V bases its claim, every invoice that was submitted to Zurich, and any documentation B&V received showing whether or not those invoices were reimbursed.  B&V shall produce this information.

Request No. 7 seeks:

All documents reflecting any form of payment or credit You have received from the plant owners pertaining to the $79 million settlement You reached with them and/or monies received from the plant owners for the JBR Internals demolition and replacement, betterment and/or change in the design from a top-supported structure to a bottom-supported structure, including but not limited to wire transfer instructions, canceled checks, ledger entries, account entries, proofs of payment, transmittal or explanatory letters or any other form of documentation reflecting the fact and amount of payment You have received.

Request No. 8 seeks:

All documents reflecting how the monies or credit referenced in Request No. 7, above, were allocated or paid, including but not limited to wire transfer instructions, canceled checks, ledger entries, account entries, proofs of payment, transmittal or explanatory letters, or any other form of documentation reflecting the fact and amount of such allocations or payments.

---

[47] *Swackhammer v. Sprint Corp. PCS*, 225 F.R.D. 658, 662 (D. Kan. 2004) (citing *McCoo v. Denny's Inc.*, 192 F.R.D. 675, 694 (D. Kan. 2000) (citing *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 310 (D. Kan. 1996)) (internal quotations omitted).

B&V's responses to Requests 7 and 8 are nearly identical.  They state that B&V objects to the requests "to the extent [they seek] documents protected by the attorney-client privilege or work product doctrine."[48]  B&V then explains that non-privileged responsive documents have been produced.  The court provided the parties extensive guidance on the requirements for asserting work-product or attorney-client privilege objections in a previous order.[49]  The court emphasized that such objections must be substantiated.  For example, B&V, as the party asserting the objection, has the burden to show that the documents sought were prepared in anticipation of litigation by or for a party or its representative.[50]  B&V made no attempt to substantiate its objections.  Its response does not suggest that any documents have been withheld based on these objections.  Instead, the response states "B&V is not withholding financial documentation on privilege grounds."  Because B&V has not substantiated any work-product or attorney-client privilege objection to Requests 7 or 8, any such objection is waived.  To the extent B&V has failed to produce documents responsive to Requests 7 & 8 it must do so by **August 21, 2015.**

Additionally, in its responses to the requests for production, B&V admits that it has not produced all responsive documents in its possession, custody, or control, because of the volume of documents involved, but B&V does not assert a substantiated undue burden objection.  Because B&V has not made any substantiated objections in its responses to the liability insurers' Third Production Requests, B&V is hereby compelled to supplement its production with any documents responsive to those requests that have not yet been produced.  Specifically, B&V

---

[48] Mem. in Supp. of Mot. Evidentiary Sanctions at 13, ECF No. 253-13 B&V's responses to production requests.

[49] Mem. & Order, ECF No. 14.

[50] *Id.* at 6.

shall produce all documents responsive to requests 6, 7, and 8.  Additionally, B&V shall

supplement its production to the extent that it admits that it has not produced the discovery

sought in its entirety.  For example, in its response to Request No. 1 B&V admits that it has not

produced invoices for $19,410,592 of its total costs or expenses without asserting a substantiated

objection to the production of those invoices.  B&V shall produce all documentation of its

damages claim and all documentation of reimbursements, including but not limited to:  receipts;

wire transfer documentation; contractor and vendor invoices; the information contained in and

supporting the "payment packets" which were submitted to Zurich; per diem charges; employee

expense reports; the information upon which the detail job cost reports were based; all

documentation upon which payment records were based; and any documentation of any other

charges for which B&V is seeking reimbursement.

        Although B&V claims that it cannot tell which invoices were reimbursed by Zurich, it

can still produce what it submitted and what reimbursements it received.  The liability insurers

produced deposition testimony from B&V's witnesses who do not dispute that B&V has the

ability to "look at the [accounting] record and say, yes, we made this submission on this date and

we received this payment" from the professional liability insurer.[51]  The defendants have the

right to inspect these "payment packets" or invoice submissions and whatever payments were

made by Zurich.  To date, the liability insurers claim that B&V has not produced any

documentation of reimbursements made to B&V by third parties.  Production of these documents

should be made as well.  B&V's supplementation of its document production shall occur on or

---

[51] Mem. in Supp. of Mot. Evidentiary Sanctions at 8, ECF No. 253.

before **August 21, 2015**, and shall be made in the format requested by defendants pursuant to the parties' scheduling order.[52]

### e. B&V's alleged privilege objection

The liability insurers seek to have the court enter an order that B&V shall not assert privilege as an objection to the production of financial documents. This is in line with the court's previous memorandum and order discussed above, which detailed when it is appropriate for a party to object to a request on the basis of privilege.[53] Here, B&V originally made, but later withdrew, privilege objections to Requests 6, 7, and 8. B&V's initial privilege objections were unsubstantiated and unaccompanied by a privilege log as discussed above, and therefore failed to follow the court's direction. But because B&V now denies that it asserts any privilege objection to those requests, the court deems any such objections abandoned.[54]

Any ruling prospectively prohibiting objections is premature and because B&V has abandoned its objections any ruling at this time is moot. "Generally, when a party responding to discovery requests states that it has fully responded, the court will not compel further responses unless the moving party has presented information that calls into question the veracity of the responding party's representation."[55] B&V affirms that it did not withhold any responsive documents on privilege grounds but if it has withheld any responsive documents it shall produce them by **August 21, 2015**, because it has waived any objections to such production.

### f. Scheduling order extension

---

[52] Scheduling Order at 4, ECF No. 57.

[53] Mem. & Order, ECF No. 164.

[54] Pl.'s Mem. in Opp'n to Liability Insurers' Mot. for Evidentiary Sanctions at 14, ECF No. 264.

[55] *F.D.I.C. v. McCaffree*, 289 F.R.D. 331, 338 (D. Kan. 2012) (citing *Sonnino v. Univ. Kan. Hosp. Auth.*, 220 F.R.D. 633, 639 (D. Kan. 2004)).

The liability insurers do not make any specific requests regarding an extension of the scheduling order.  If the parties seek an extension of any remaining deadlines, they should meet and confer and move the court for such an extension, describing the reasons they are requesting an extension and listing proposed dates for specific extensions.

### III.    Conclusion

In sum, the liability insurers' motion is granted in part and denied in part.  B&V initiated this suit and was aware that discovery would be extensive.  The fact that B&V hired its own expert, who generated a damages report based on a documented technique involving "sampling," may satisfy the requirements of Rule 26, but it does not alleviate B&V of the duty to respond to subsequent discovery requests seeking the underlying documents.  Defendants properly requested the underlying documentation in a request for production of documents and are entitled to do their own investigation of any and all information underlying B&V's claim including any evidence that may show it was already reimbursed by third parties.

B&V's only explanation for nonproduction is that it has produced a high percentage of all the documentation available and that defendants should accept this production as sufficient.  This response admits that some percentage of documentation has not yet been produced.  The liability insurers are not required to accept B&V's assertion that "no additional damages information is necessary" for them to analyze and confirm the accuracy of its damages claim.[56]

B&V shall produce any and all such documentation, along with any responsive documents to Requests 6, 7, and 8 that have not already been produced, in the format requested by defendants, on or before **August 21, 2015**.

---

[56] Pl.'s Mem. in Opp'n to Liability Insurers' Mot. for Evidentiary Sanctions at 9, ECF No. 264.

The liability insurers' motion is denied in all other respects.  The court declines to impose harsher sanctions at this time because any prejudice caused to the defendants may be corrected by B&V's prompt production of the above described discovery.

Accordingly,

**IT IS THEREFORE ORDERED** that defendants' Motion for Sanctions (ECF No. 252) is granted in part and denied in part.  B&V shall produce the above described documentation of its damages claim and any reimbursements made by third parties as requested on or before **August 21, 2015**.

**IT IS SO ORDERED.**

Dated this 22d day of July, 2015, at Topeka, Kansas.

s/ K. Gary Sebelius
K. Gary Sebelius
U.S. Magistrate Judge